COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | | |
|---|---|---|---|
| WILLIAM GEOFFREY THACKER, | § | | No. 08-18-00085-CR |
| Appellant, | § | | Appeal from the 205th |
| v. | § | | Judicial District Court |
| STATE OF TEXAS, | § | | of El Paso County, Texas |
| Appellee. | § | | (TC#20170D02483) |

# **O P I N I O N**

A jury found Appellant William Geoffrey Thacker guilty of two counts of sexual assault of a child, and one count of trafficking a child for sexual assault.[1]  The trial court sentenced Appellant to a life sentence based on a finding that he had been convicted of a prior sexual offense in 2008 in North Carolina.  Appellant raises six issues on appeal.  Three issues pertain to a confession that he made shortly after his arrest.  Three additional issues contend that his sentence was improperly enhanced with a prior conviction from North Carolina.  Because we sustain Appellant's last issue--a claim that the State failed to meet its burden of proving the finality of

---

[1] A person commits the offense of "trafficking of persons," if, among other things, the person "traffics a child and by any means causes the trafficked child to engage in, or become the victim of, conduct prohibited by . . . Section 22.011 (Sexual Assault)."  TEX.PENAL CODE ANN. § 20A.02(7)(C).

1

Appellant's prior conviction--we remand for a new sentencing hearing. But we overrule Appellant's other issues and affirm the judgment of conviction on the issue of Appellant's guilt.

## I. FACTUAL BACKGROUND

### A. Events Leading to Appellant's Arrest

Sometime in early 2016, Appellant (who was 27 years old) met K.S. (who was 16 years old) at a carnival in Burlington, North Carolina. Appellant and K.S. thereafter developed a friendship over the course of the next several months. On May 17, 2016, after being suspended from school, K.S. snuck out of the house where she lived with her adoptive parents, and contacted Appellant, informing him that she wanted to attend a party with some friends in Virginia Beach, Virginia. After Appellant agreed to take her to Virginia Beach, K.S. voluntarily entered Appellant's vehicle. As they were driving, K.S. fell asleep and when she awoke, they were driving through Georgia. She immediately told Appellant that she wanted to return home. According to K.S., Appellant refused her requests to return home, and thereafter held her against her will for the next two weeks, as they traveled West, crossing several state lines, and ultimately ending their travels in Texas.

According to K.S., during the two weeks they traveled together, Appellant threatened to harm her if she told anyone that she was being held against her will, and made her pretend to be his pregnant wife when they were in public. K.S. testified that during the first week of their journey, they slept in Appellant's truck, and Appellant forced her to have both vaginal and anal sex with him multiple times a day, against her will, both in the truck, as well as on the side of the road. Subsequent testing on the cloth seats of Appellant's truck revealed a sperm-cell DNA sample containing a mixed DNA sample from Appellant and K.S.

2

During the second week of their travels, and after driving into New Mexico and Arizona, Appellant turned around and began driving East into Texas.[2] Appellant's truck suffered a flat tire and damaged the rim several miles outside of El Paso. A Good Samaritan assisted them by giving Appellant a temporary job so that he could earn enough money to repair the wheel. Appellant and K.S. thereafter stayed in a motel in El Paso for approximately a week, and throughout that time, Appellant worked during the day for the Good Samaritan's landscaping business, while K.S. spent the day with the Good Samaritan's wife and two daughters at their house.[3] K.S. testified that while staying in the motel, Appellant continued to force her to engage in nonconsensual sexual activities, including vaginal, oral, and anal sex multiple times a day.

With the truck repaired, Appellant and K.S. left El Paso heading East on Interstate 10. The next morning, Appellant was spotted speeding near Van Horn, Texas, by a State Trooper. A license plate check turned up a warrant for Appellant's arrest. After a failed traffic stop, followed by a high-speed chase, officers were finally able to stop Appellant's truck by shooting out his tires. Upon exiting the truck, K.S. informed the officers that she was a 16-year-old runaway from North Carolina.[4]

---

[2] K.S. testified that at various times, Appellant told her that he wanted to drive them either into Mexico or Canada, so that they could not be found.

[3] Although K.S. spent the day with the Good Samaritan's wife and children, she did not reveal to anyone in the family that she was being held against her will. At trial, the Good Samaritan and his wife both testified that they observed Appellant and K.S. act lovingly toward each other. K.S. claimed that she did not reveal her plight to them because she did not want to upset the couple's teenage daughters, and because she believed Appellant would become angry or violent with her if she did.

[4] After Appellant was taken into custody, K.S. made conflicting statements to law enforcement officers regarding whether Appellant had held her against her will, initially stating that she did not want them to think that she "didn't want to be with [Appellant] because [she] did." However, K.S. later told the officers that although she initially left North Carolina with Appellant on a voluntary basis, she later informed him that she wanted to return home, but he forced her to stay with him throughout the next two weeks.

Appellant was placed under arrest and read his *Miranda* rights at the scene by the arresting officer. Appellant was thereafter transported to Van Horn, Texas, where he was interrogated by the Texas Rangers in a recorded interview.

### B. The Custodial Interrogation

During the interrogation, Appellant informed the Rangers that K.S. contacted him on May 17, 2016, while he was in the process of planning a trip to Mississippi to visit his sister, and she agreed to join him on the trip. According to Appellant, however, shortly after leaving, the phone charger in his vehicle stopped working, and he threw his phone out the truck's window in anger, leaving him unable to navigate to his sister's house. Appellant claimed that he and K.S. agreed to continue driving West on Interstate 10, so that they could explore Texas and its neighboring states.

Appellant initially informed the Rangers that he and K.S. did not engage in sexual intercourse at any time during their travels, as he knew K.S. was 16 years old, and that he therefore could not have sexual relations with her. However, as explained in more detail below, Appellant eventually confessed that he had engaged in sexual intercourse with K.S. on an almost-daily basis during their two weeks together. Appellant repeatedly claimed, however, that the intercourse was consensual at all times, and that K.S. was a willing participant in everything they did.

## II. PROCEDURAL BACKGROUND

Appellant was indicted on two counts of sexual assault of a child younger than 17 years of age, and one count of trafficking a child younger than 18 years of age, with the intent that the victim "engage in or become the victim of sexual assault."

Prior to trial, Appellant moved to suppress his confession, arguing, among other things, that the confession was "involuntary," as it was the result of "coercion, intimidation, and/or

4

promises made by the State and its investigative agents." In addition, Appellant argued that he invoked his right to counsel during the interrogation, but the interrogating officers failed to honor that request, and continued to interrogate him in violation of his rights under *Miranda* and the Texas Code of Criminal Procedure. Following a hearing, the trial court denied the motion to suppress, and at trial, excerpts of the recorded interview were admitted into evidence.

Following trial, the jury convicted Appellant of all three counts as charged in the indictment. He elected to have the trial court sentence him. After conducting two hearings on the issue, the trial court found that Appellant had been previously convicted in 2008 of a second-degree forcible sexual offense in North Carolina, and the trial court used that prior conviction, over Appellant's objections, to impose a mandatory sentence of life in prison, pursuant to Article 12.42 of the Texas Code of Criminal Procedure.

## III. ISSUES ON APPEAL

We consider Appellant's first three issues in reverse order, first addressing Appellant's contention that the trial court erred in denying his motion to suppress his confession, and then addressing his argument that the trial court gave an erroneous or defective charge to the jury regarding the admissibility of his confession. We then consider Appellant's next three issues regarding whether the trial court erred in using the prior conviction from North Carolina to enhance his sentence.

## IV. THE DENIAL OF THE MOTION TO SUPPRESS

### A. Standard of Review

We review a trial court's ruling on a motion to suppress a confession under a bifurcated standard of review. *See Weems v. State*, 493 S.W.3d 574, 577 (Tex.Crim.App. 2016); *see also State v. Alderete*, 314 S.W.3d 469, 472 (Tex.App.--El Paso 2010, pet. ref'd). Under this bifurcated

5

standard, we afford almost total deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of witness credibility and demeanor. *See Furr v. State*, 499 S.W.3d 872, 877 (Tex.Crim.App. 2016); *see also Brodnex v. State*, 485 S.W.3d 432, 436 (Tex.Crim.App. 2016). However, we conduct a de novo review of mixed questions of law and fact that do not hinge on credibility or demeanor, as well as the trial court's application of the law to the facts. *Brodnex*, 485 S.W.3d at 436. Additionally, we conduct a de novo review with regard to pure questions of law. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex.Crim.App. 2011). Where, as here, a videotape exists of the defendant's confession, and no credibility issues exist, the court's review is entirely de novo. *See Herrera v. State*, 194 S.W.3d 656, 658 (Tex.App.--Houston [14th Dist.] 2006, pet. ref'd).

**B. Whether Appellant Invoked his Right to Counsel**

In his second issue, Appellant argues that despite invoking his right to counsel, the Rangers continued to question him. The issue turns on the initial premise of his argument that he invoked the right to counsel.

### 1. The Davis bright-line test

Because an accused is entitled to the assistance of counsel during custodial interrogation, he must be informed of his right to counsel at the start of the interrogation; further, if the accused invokes the right to counsel at any time during the interrogation, the officers must cease their questioning until counsel has been provided, or until the suspect voluntarily reinitiates dialogue. *See Davis v. United States*, 512 U.S. 452, 458 (1994), *citing Miranda v. Arizona*, 384 U.S. 436 (1966); *see also State v. Gobert*, 275 S.W.3d 888, 892 (Tex.Crim.App. 2009). This secondary *Miranda* right is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights[.]" *Davis*, 512 U.S. at 458.

In order to address the difficulties of proof in determining whether an accused has invoked the right to counsel during an interrogation, as well as to provide guidance to officers conducting such interrogations, the United States Supreme Court established an objective "bright line" rule for determining when a suspect's statements were sufficient to invoke the right to counsel. *Id*. at 458-59. This test distinguishes between situations in which an accused *might* be asking for a lawyer from those in which the accused *actually* asks for one. Thus, in order to find that an accused invoked the right to counsel, there must be evidence that the accused made an unambiguous and unequivocal statement that could reasonably be construed to be an actual expression of a desire for the assistance of an attorney. *Id.* Conversely, if a suspect only makes an ambiguous or equivocal reference to an attorney, which a reasonable officer in light of the circumstances would not have understood to be an invocation of the right to counsel, the interrogating officers are not required to cease questioning. *Id.*; *see also Davis v. State*, 313 S.W.3d 317, 339-41 (Tex.Crim.App. 2010) (recognizing that the test for determining whether a request for counsel was made is objective, and is based on whether the suspect "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney"). Therefore, under *Davis*, the mere mention of the word "attorney" or "lawyer" by an accused during an interrogation, without more, does not invoke the right to counsel. *Gobert*, 275 S.W.3d at 892-93, *citing Dinkins v. State*, 894 S.W.2d 330, 351 (Tex.Crim.App. 1995). Further, when an accused makes an ambiguous reference to an attorney, although it may be good police practice to do so, interrogating officers are not required to seek clarification of whether the accused truly wishes to invoke the right to counsel before continuing their questioning. *See Davis*, 512 U.S. at 461

*2. Appellant clarifying questions did not invoke the right to counsel*

After asking Appellant a series of background questions, the lead interrogating officer, Texas Ranger Roy McMullen, reminded Appellant that he had previously been read his *Miranda* warnings at the time of his arrest, and then read Appellant those rights once again. Appellant responded that he was willing to speak to the officers. However, later in the interview, and as the Ranger focused on whether Appellant engaged in sex with K.S., Appellant made the following statements, which he now claims were an invocation of his right to counsel:

> [APPELLANT]: If I ask for a lawyer right now do you-all leave and then come back or can you-all get me a lawyer in here right now?
>
> [RANGER] MCMULLEN: I can get you a lawyer in here right now.
>
> [APPELLANT]: I mean, is it possible to get a lawyer in here right now?
>
> [RANGER] MCMULLEN: I'm not sure if it's possible to get a lawyer right now. Was it consensual or was it forced?

Citing pre-*Davis* authority, Appellant argues that the two questions he asked were sufficient to invoke his right to counsel and that the Rangers were therefore required to cease questioning him at that time.[5] We disagree. Applying the bright-line test in *Davis*, Texas courts have uniformly held that when a suspect asks a generalized question seeking to clarify the right to counsel, this is not considered an unambiguous or unequivocal expression of a desire to invoke the right to counsel. *See, e.g.*, *Dinkins*, 894 S.W.2d at 352 (suspect's question concerning what an attorney would tell him to do under the circumstances did not rise to an invocation of the right to counsel); *Robinson v. State*, 851 S.W.2d 216, 223-24 (Tex.Crim.App. 1991) (en banc) (suspect's question asking, "Do I need to talk to a lawyer before I sign?" was equivocal and did not invoke the right to counsel); *State v. Munoz*, No. 08-16-00023-CR, 2018 WL 1517006, at *10 (Tex.App.-

---

[5] As the State points out, the cases relied on by Appellant for this proposition predate the holding in *Davis* in which the Court adopted the bright-line test we apply today. We therefore do not consider these cases in our analysis.

-El Paso Mar. 28, 2018, no pet.) (not designated for publication) (accused's question, asking, "So why can't my lawyer be present?" was not an unequivocal or unambiguous invocation of his right to counsel). The questions that Appellant asked during the interrogation were generalized questions that, at most, sought to clarify whether it would be "possible" to have an attorney brought in to assist him, which were too ambiguous to be considered an invocation of the right to counsel. *See, e.g.*, *Gutierrez v. State*, 150 S.W.3d 827, 832 (Tex.App.--Houston [14th Dist.] 2004, no pet.) (suspect's question asking, "Can I have [a lawyer] present now?" was ambiguous and did not clearly invoke the right to counsel); *Loredo v. State*, 130 S.W.3d 275, 284-85 (Tex.App.--Houston [14th Dist.] 2004, pet. ref'd) (suspect's question asking, "Can I ask for a lawyer now?" was not an unambiguous invocation of right to counsel).

Further, we find it significant that at other times during the interrogation, Appellant made statements indicating that he did *not* intend to invoke his right to counsel, first expressing his willingness to speak freely with the officers at the start of the interrogation after being read his rights, and later stating during the midst of the interrogation: "I'm sitting here cooperating. I'm actually answering these questions and talking to you without a lawyer *of my own volition*." Appellant's expressed willingness to voluntarily speak with the Rangers, without the assistance of counsel, bolsters our conclusion that a reasonable officer in Ranger McMullen's position would not have interpreted Appellant's clarifying questions, as described above, to be an unambiguous invocation of the right to counsel. *See Davis*, 313 S.W.3d at 341 (conclusion that defendant's statements were too equivocal and ambiguous to invoke the right to counsel was bolstered by the fact that the defendant subsequently made statements to the officers signaling that the interview should continue).

Appellant's Issue Two is overruled.

**C. Whether Appellant's Confession was Involuntary as a Matter of Law**

In his third issue, Appellant contends that the trial court erred by denying his motion to suppress his confession, contending it was rendered involuntary based on the following four statements Ranger McMullen made to Appellant during the interrogation:

"That's what I'm here for. I'm going to help you out."

"Well, and that's what I'm here for again. I'm going to help you here. I'm going to help you remember."

"I'm trying to help you out here William."

"I understand that, man. I understand that, but you've got to understand that we're--we're here to help you out. All right?"

In making this argument, Appellant relies on a line of cases, beginning with *Dunn v. State*, in which the Court of Criminal Appeals held that a defendant's confession was rendered involuntary as a matter of law under the Code of Criminal Procedure, because it came after an interrogating officer told the defendant during the midst of the interrogation that a confession could be used "for or against him." *Dunn v. State*, 721 S.W.2d 325, 341 (Tex.Crim.App. 1986) (en banc). In reaching this conclusion, the court noted that the Code of Criminal Procedures requires an interrogating officer to warn the suspect that his confession could be used "against" him, and that the officer's statement that the confession could be used "for or against" him was a misstatement of the warnings set forth in the Code. *Id.*

The holding in *Dunn*, however, was abrogated in 1997 by the Court of Criminal Appeals' opinion in *Creager v. State*, 952 S.W.2d 852, 856 (Tex.Crim.App. 1997) (en banc). In *Creager*, the Court held that a confession was only rendered involuntary as a matter of law if the interrogating officers made the "for or against" misstatement *before* the interrogation, but that similar remarks made by the officers *during* the interrogation did not have this same effect. *Id.* at

10

856. Instead, the Court in *Creager* held that when such remarks are made during an interrogation--after proper statutory warnings have been given at the outset--a court must examine the nature of the officers' remarks under a "totality of the circumstances" test to determine if the remarks rendered the defendant's confession involuntary. *Id., citing Armstrong v. State*, 718 S.W.2d 686, 693 (Tex.Crim.App. 1985) (en banc); *see also Delao v. State*, 235 S.W.3d 235, 239 (Tex.Crim.App. 2007), *citing Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991) (in order to determine whether a confession was made freely and voluntarily, a court must examine the totality of the circumstances under which the confession was made).

When applying the totality of the circumstances test, we focus on whether the challenged remarks were "calculated to produce an untruthful confession or was offensive to due process." *Creager*, 952 S.W.2d at 856; *see also Wilson v. State*, 311 S.W.3d 452, 461 (Tex.Crim.App. 2010); *Maynes v. State*, No. 08-16-00024-CR, 2018 WL 1082245, at \*5 (Tex.App.--El Paso Feb. 28, 2018, no pet.) (not designated for publication). In this case, and contrary to Appellant's assertion, none of the four remarks that he challenges informed Appellant, either directly or indirectly, that a confession could be used "for or against" him, or that a confession would help his case.[6] Instead, at most, Ranger McMullen's four statements could be categorized as general offers to "help" or assist Appellant, with no specific indication of what form such "help" might take.

Courts have uniformly held that when, as here, an interrogating officer makes only a generalized offer to help a defendant, such an offer is not likely to induce an accused to make an

---

[6] Moreover, even if Ranger McMullen's statements could be interpreted as informing Appellant that a confession could help his case, courts have uniformly held that such statements are not likely to induce an accused to make an untruthful statement, and therefore do not render a confession involuntary. *See Dykes v. State*, 657 S.W.2d 796, 796 (Tex.Crim.App. 1983) (en banc) (recognizing that a confession is not rendered inadmissible because it is made after an accused has been told that it would be "best to tell the truth," or "best for him to go ahead and make a statement."); *see also Muniz v. State*, 851 S.W.2d 238, 253-54 (Tex.Crim.App. 1993) (en banc) (statements made to a suspect regarding how a confession can sometimes result in leniency do not render a confession involuntary); *Drake v. State*, 123 S.W.3d 596, 603 (Tex.App.--Houston [14th Dist.] 2003, pet. ref'd) (officer's assertion to defendant that she "could help herself" by giving a statement did not render statement involuntary).

untruthful statement, and therefore will not typically invalidate a confession. *See Garcia v. State*, 919 S.W.2d 370, 388 (Tex.Crim.App. 1996); *see also Vieira v. State*, No. 08-16-00100-CR, 2018 WL 3084155, at *7 (Tex.App.--El Paso June 22, 2018, no pet.) (not designated for publication) (recognizing that "unspecific offers to help" an accused during an interrogation are not likely to induce a suspect to make an untruthful statement and will therefore not invalidate a confession). Instead, in order for an offer of help to render a defendant's statement involuntary, there must be: (1) a specific promise of some benefit to the accused, (2) that is positive, (3) made or sanctioned by someone in authority, and (4) of such an influential nature that it would cause a defendant to speak untruthfully. *Martinez v. State*, 127 S.W.3d 792, 794 (Tex.Crim.App. 2004). As set forth above, Appellant has not pointed to any specific promises made by Ranger McMullen in which he agreed to provide a benefit to Appellant if he confessed. Accordingly, we conclude that Ranger McMullen's remarks were not likely to induce Appellant into making an untruthful statement, and they did not render Appellant's confession involuntary. *See Garcia*, 919 S.W.2d at 388.

Appellant's Issue Three is overruled.

## V. THE JURY CHARGE ERROR

In Issue One, Appellant contends that the jury charge misstated the law with regard to when it could consider a defendant's confession. In particular, he contends that the jury charge was erroneous because: (1) it failed to instruct the jury that it could only consider an accused's confession made during a custodial interrogation if the interrogating officers honored the accused's right to counsel, and (2) it improperly instructed the jury that an accused has the burden of proving that a confession was not made in compliance with the Code, when it should have placed the burden on the State to prove that the confession was made in compliance with the Code.

12

**A. Standard of Review**

In a criminal case, the trial court is required to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case[.]" TEX.CODE CRIM.PROC.ANN. art. 36.14; *see also Mendez v. State*, 545 S.W.3d 548, 551-52 (Tex.Crim.App. 2018). Because of this requirement, an "alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.Crim.App. 2012). We therefore review complaints of jury-charge error under a two-step process, considering first whether error exists; and if so, we then review the record to determine whether the error caused sufficient harm to require reversal. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex.Crim.App. 2013). If the defendant preserved error by timely objecting to the charge, an appellate court will reverse if the defendant demonstrates that he suffered some harm as a result of the error. *Sakil v. State*, 287 S.W.3d 23, 25-26 (Tex.Crim.App. 2009). If the defendant did not object at trial, we will reverse only if the error was so egregious and created such harm that the defendant did not receive a fair and impartial trial. *Id.* at 26. However, if the defendant was not entitled to the jury charge in the first instance, any error in the charge is considered harmless and does not require reversal of the defendant's conviction. *See, e.g.*, *Torres v. State*, No. 08-13-00027-CR, 2016 WL 5404773, at *3 (Tex.App.--El Paso Sept. 28, 2016, pet. ref'd) (not designated for publication) (recognizing that when a defendant was not entitled to an instruction, but the trial court nevertheless gives the instruction, any error in the instruction is harmless), *citing Hughes v. State*, 897 S.W.2d 285, 301 (Tex.Crim.App. 1994).

**B. The Defects in the Jury Charge**

"No oral . . . statement of an accused made as a result of custodial interrogation shall be admissible" unless the accused receives five specific warnings about his rights and the accused

then "knowingly, intelligently, and voluntarily waives" those rights. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 3. Further, Section 7 of Article 38.22 provides that when the issue is "raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining" to when a statement may be considered to be in compliance with the Code. *Id*. art. 38.22, § 7. Thus, when applicable, a defendant is entitled to a so-called Section 7 instruction, explaining that a confession may not be considered unless the State establishes beyond a reasonable doubt, that the warnings were properly administered in accordance with the Code, and that the accused knowingly and voluntarily waived his rights as set forth in the warnings. *Contreras v. State*, 312 S.W.3d 566, 572, 580 (Tex.Crim.App. 2010); *see also Oursbourn v. State*, 259 S.W.3d 159, 174, 180-181 (Tex.Crim.App. 2008); *Delao v. State*, 235 S.W.3d 235, 237 n.2 (Tex.Crim.App. 2007) (burden is on the State to prove a defendant's statement was voluntarily made in compliance with defendant's rights). One of those warnings includes the right to counsel. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 2(a)(3)-(4).

The jury charge in the present case instructed the jury that:

No oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless the accused received from the person to whom the statement is made, a warning that: (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; (2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior to and during any questioning; (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning, and (5) he has the right to terminate the interview at any time.

While the charge included the five statutory warnings, the charge failed to also instruct the jury that the confession could not be considered unless the accused knowingly, intelligently, and voluntarily waived the rights set forth in those warnings. Further, as Appellant also points out, and the State concedes, the jury charge erroneously placed the burden on Appellant to establish

14

that the confession was obtained in violation of the Code.[7] Instead, that burden should have rested with the State.

### C. No Harm Resulted from the Defects in the Jury Charge

Although the parties disagree on whether this error was preserved by Appellant's objection and what standard of harm we should apply, we conclude that the error in the jury charge does not require reversal of Appellant's conviction regardless of whether the error was preserved or not, as Appellant was not entitled to a Section 7 instruction in the first instance. A defendant is only entitled to a Section 7 instruction when the issue of whether the interrogating officers complied with the Code is "raised by the evidence," and therefore there must be a "factual dispute" in the evidence regarding whether a defendant's confession was made in compliance with the requirements of the Code before such an instruction will be given. *See Oursbourn*, 259 S.W.3d at 174, 176; *Dinkins v. State*, 894 S.W.2d 330, 354 (Tex.Crim.App. 1995), *citing Hernandez*, 819 S.W.2d 806, 812 (Tex.Crim.App. 1991) (en banc); *see also Mendoza v. State*, No. 13-09-0027-CR, 2011 WL 2402045, at *6-8 (Tex.App.--Corpus Christi June 9, 2011, no pet.) (mem. op., not designated for publication) (holding that defendant was not entitled to a Section 7 instruction, where the evidence did not raise a fact issue as to whether he requested to terminate interrogation). And we find no such factual dispute in this record.

As set forth above, the undisputed facts reflect that Appellant was read his *Miranda* warnings both at the time of his arrest and prior to giving his confession, and that he voluntarily waived those warnings when he agreed to speak with the Rangers. Further, we have already determined, as a matter of law, that Appellant did not subsequently invoke his right to counsel

---

[7] After explaining the requirements of the Code regarding the administration of the warnings, the jury charge then stated: "If you believe beyond a reasonable doubt that the evidence was obtained in violation of the above-listed provisions, then in such event, the jury shall disregard any such evidence obtained."

during the interrogation. Accordingly, because there was no factual dispute on the issue of whether Appellant invoked his right to counsel or whether he waived that right, there was no factual issue for the jury to resolve, and Appellant was therefore not entitled to a Section 7 instruction on this issue.[8] *See Dinkins*, 894 S.W.2d at 354. Accordingly, we cannot conclude that he was harmed by any error in the instruction. *See, e.g.*, *Torres*, 2016 WL 5404773, at \*3.

Appellant's Issue One is overruled.

## VI. THE PRIOR CONVICTION FROM NORTH CAROLINA

In his last three issues, Appellant contends that the trial court erred in using evidence of a 2008 judgment of conviction from North Carolina to enhance his sentence, contending that the State failed to meet its burden of establishing that: (1) he was the person who was the subject of the prior conviction, (2) the offense identified in the prior judgment was a qualifying offense under Texas law for purposes of enhancement, and (3) the prior conviction was final under North Carolina law.

### A. Applicable Law

In Texas, a defendant convicted of a listed sex offense, including sexual assault of a child and trafficking of a child, shall be punished by imprisonment in the Texas Department of Criminal Justice for life, if he has "previously been finally convicted" of certain enumerated felony offenses under Texas law. TEX.PENAL CODE ANN. § 12.42 (c)(1), (2)(A)(i), (B)(ii). The Code also provides for a mandatory life sentence if the defendant has been previously convicted of an offense under the laws of another state which contain elements that are substantially similar to the elements of

---

[8] Because Appellant focuses solely on the question of whether the jury was properly instructed on the law as it pertains to the waiver of his right to counsel in accordance with Section 7 of the Code, we limit our analysis to this aspect of the jury charge.

certain enumerated qualifying prior offenses. *See Fisk v. State*, 574 S.W.3d 917, 919 (Tex.Crim.App. 2019), *citing* TEX.PENAL CODE ANN. § 12.42(c)(2)(B)(v).

In order to "establish that a defendant has been convicted of a [qualifying] prior offense, the State must prove beyond a reasonable doubt that, (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers v. State*, 220 S.W.3d 919, 921-22 (Tex.Crim.App. 2007); *see also Henry v. State*, 509 S.W.3d 915, 918 (Tex.Crim.App. 2016). In addition, the State has the burden of establishing that the defendant's prior conviction is a "final" judgment, before it may be used to enhance the defendant's current conviction. *See, e.g.*, *Fletcher v. State*, 214 S.W.3d 5, 8 (Tex.Crim.App. 2007); *see also Ex parte Pue*, 552 S.W.3d 226, 230 (Tex.Crim.App. 2018) ("It is well established that under Texas law only convictions that are 'final' can be used for enhancement purposes"); *Beal v. State*, 91 S.W.3d 794, 796 (Tex.Crim.App. 2002) (recognizing that a court may not use a prior conviction to enhance a defendant's sentence until it has become final).

In determining whether the State has met its burden of establishing these requirements, the fact finder looks at the "totality of the evidence" admitted. *See Flowers*, 220 S.W.3d at 923; s*ee also Wood v. State*, 486 S.W.3d 583, 589 (Tex.Crim.App. 2016). Although evidence of a certified copy of a final judgment and sentence is "preferred," the Court of Criminal Appeals has made it clear that the State is not limited in its methods of proving the prior conviction, noting that, "[j]ust as there is more than one way to skin a cat, there is more than one way to prove a prior conviction." *Flowers*, 220 S.W.3d at 922-23. Therefore, the State may use "[a]ny type of evidence, documentary or testimonial" to meet its burden of proving the prior conviction. *Id.* at 922.

**B. The State's Evidence**

Prior to trial, the State filed a notice of enhancement, alleging that Appellant had been previously convicted on March 13, 2008 in Alamance County, North Carolina, of a second-degree sexual offense. At Appellant's punishment hearing, the State's prosecutor presented evidence that the El Paso District Attorney's office had sent a letter to the records division for the superior court in Alamance County, seeking certified judgments and sentencing information for William Geoffery Thacker and/or William Geoffrey Thacker, with a date of birth of 10/17/1988. In response, the court sent the district attorney's office court documents for an individual named "William Geoffery Thacker," sharing that birth date, who had been found guilty and convicted of one count of a "second degree sexual offense" on or about March 13, 2008, for an offense committed on February 16, 2007.

Appellant objected to the use of the prior conviction, contending that the State had not met its burden of establishing that the offense for which he was convicted was substantially similar to a qualifying Texas offense, and that the State had failed to establish that he was the same individual who had been convicted in North Carolina. Following two hearings on the issue, the trial court ultimately made a written finding that North Carolina's "second degree forcible sexual offense" which served as the basis for the prior conviction, was "substantially similar" to the Texas offense of Sexual Assault, as found in Section 22.011 of the Texas Penal Code, and could therefore be used to enhance Appellant's sentence.

**C. Whether the North Carolina Offense was a Qualifying Offense Under Texas Law**

In Issue Five, Appellant contends that the State failed to establish that the offense that was the subject of the prior conviction--North Carolina's second degree forcible sexual assault--could

be considered a qualifying offense under the Texas law for purposes of enhancing his sentence. We disagree.

### 1. The substantial similarity test

In order to use a prior conviction from another state to enhance a defendant's sentence under Section 12.42 of the Texas Penal Code, the State must establish that the prior conviction was for an offense that is "substantially similar" to any one of the qualifying offenses listed in that Code provision. TEX.PENAL CODE § 12.42(c)(2)(B)(v); *see also Fisk*, 574 S.W.3d at 919. Until recent changes in the law, Texas followed a two-prong test for determining whether an out-of-state offense was substantially similar to one of the qualifying offenses listed in the Texas Code. *Fisk*, 574 S.W.3d at 920. The first prong of the test required that "the elements being compared . . . must display a high degree of likeness, but may be less than identical." *Id*. The second prong required "that the elements must be substantially similar with respect to the individual or public interests protected and the impact of the elements on the seriousness of the offenses." *Id*. However, in a recent decision, the Court of Criminal Appeals disavowed the second prong of that test, i.e., the "seriousness of the offenses" prong, finding it to be "unworkable and unnecessary." *Id*. at 925. As such, the current test, and the one that we apply, is based solely on a comparison of the elements of the out-of-state offense with the elements of the Texas offense to be used as a qualifying offense, to determine whether they have a high degree of likeness. *Id*. Because the first prong presents a pure question of law, our review is de novo. *See Texas Dep't of Pub. Safety v. Fowle*, 581 S.W.3d 417, 419 (Tex.App.--Houston [14th Dist.] 2019, no pet.).

### 2. A comparison of the offenses

We previously granted the State's unopposed motion to take judicial notice of North Carolina's statutes relevant to Appellant's prior conviction, as well as an opinion issued by the

North Carolina Court of Appeals in *State v. Thacker*, 196 N.C.App. 512, 675 S.E.2d 670, 671 (2009), that appears to have affirmed Appellant's conviction. S*ee generally* TEX.R.EVID. 202(a), (b), (d) (appellate court may take judicial notice of court decisions and rules of another state); *see also Tompkins v. State*, 774 S.W.2d 195, 215 (Tex.Crim.App. 1987) (recognizing that an appellate court may take judicial notice of another state's law for the first time on appeal). We therefore consider this information in determining the elements of the offense that formed the basis of Appellant's prior conviction.

Appellant was convicted in North Carolina of one count of "a second degree forcible sexual offense" under Section 14-27.5 of the North Carolina General Statutes, now found at Section 14-27, which provides in part that:

> A person is guilty of second degree forcible sexual offense if the person engages in a sexual act with another person:
>
> (1) By force and against the will of the other person; or
>
> (2) Who has a mental disability or who is mentally incapacitated or physically helpless, and the person performing the act knows or should reasonably know that the other person has a mental disability or is mentally incapacitated or physically helpless.

N.C.GEN.STAT.ANN. § 14-27.27(a)(1)-(2). In turn, Section 14-27.1(4) of the North Carolina statutes, now found at section 14-27.20, defines a sexual act as: "Cunnilingus, fellatio, analingus, or anal intercourse," but excludes vaginal intercourse.[9] N.C.GEN.STAT.ANN. § 14-27.20(4).

Although the North Carolina statute sets forth a variety of ways of committing a second degree forcible sexual offense, the opinion that affirmed Appellant's conviction reveals that Appellant was convicted under the first prong of the statute, based on the allegation that he forced

---

[9] The offense of sexual assault by vaginal intercourse is located in another section of the North Carolina General Statutes. *See* N.C.GEN.STAT.ANN. § 14-27.22 (known as Second-degree forcible rape).

another individual to have anal sex with him against her will. *Thacker*, 196 N.C.App. at 513, 675 S.E.2d at 671 (noting that the elements of the North Carolina statute under which Appellant was convicted were: (1) a sexual act, (2) against the will and without the consent of another person, and (3) using force sufficient to overcome any resistance of the other person). Because we are aware of the particular portion of the North Carolina statute under which Appellant was convicted, we consider only that portion of the statute in comparing the elements of the North Carolina offense to the qualifying offense under Texas law. *See Fisk*, 574 S.W.3d at 922 (analyzing only that portion of the statute under which the defendant was previously convicted for purposes of determining whether it could be used to enhance the defendant's current conviction under Texas law).

The trial court here concluded that the North Carolina offense for which Appellant was convicted was substantially similar to sexual assault under Section 22.011 of the Texas Penal Code. We agree with this conclusion. Section 22.011 of the Texas Penal Code provides, among other things, that a person commits the offense of sexual assault if:

> (1) the person intentionally or knowingly:
>
> > (A) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent;
> >
> > (B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or
> >
> > (C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.

TEX.PENAL CODE ANN. § 22.011(a)(1). The Texas Penal Code further provides that a sexual assault is "without the consent" of the other person if, among other things, "the actor compels the other person to submit or participate by the use of physical force, violence, or coercion." TEX.PENAL CODE ANN. § 22.011(b)(1).

21

Therefore, both the North Carolina statute and the Texas statute make it an offense for an individual to force another person, against her will, to engage in anal or oral sex.[10] Accordingly, we conclude that the elements of the North Carolina statute share a high degree of similarity to the elements set forth in the Texas sexual assault statute. Appellant's Issue Five is Overruled.

## C. Whether the State's Evidence Linked Appellant to the Conviction

In Issue Four, Appellant contends that the State failed to present sufficient evidence in the trial court to establish that he was the "same individual" who was convicted in North Carolina of the second-degree forcible sexual offense.[11]

In support of his argument, Appellant correctly points out that a prior judgment of conviction that contains the defendant's name, although admissible at trial, is not sufficient, standing alone, to link the defendant to the prior conviction. *See generally Beck v. State*, 719 S.W.2d 205, 210 (Tex.Crim.App. 1986) (en banc) (recognizing that a certified copy of a judgment and sentence contained in a "pen packet," which bears the defendant's name, is generally admissible to prove the existence of a prior conviction, but is normally insufficient standing alone to prove that the defendant is the person who was previously convicted). Instead, "[i]t is incumbent on the State to go forward and show by independent evidence that the defendant is the person so previously convicted." *Id.*; *see also Cruz v. State*, 346 S.W.3d 601, 602-03 (Tex.App.--El Paso

---

[10] Appellant finds it significant that the Texas statute also sets forth other methods of committing sexual assault, which are not included in the North Carolina statute, such as when a defendant has had sexual intercourse with a child under the age of 17. However, the fact that the Texas statute includes additional methods of committing the offense is irrelevant to our analysis. For comparison purposes, a court need only find that *one* of the statutory methods of committing an offense is substantially similar to the offense for which the defendant was convicted in the other jurisdiction. *See, e.g.*, *Fisk*, 574 S.W.3d at 922.

[11] The State asserts that Appellant did not make an adequate objection to preserve this issue for our review, and that we should therefore decline to address this issue. The record indicates, however, that Appellant did object to the use of the prior conviction on this basis. At the first punishment hearing, Appellant expressly asserted that "the proof of [Appellant] being the same individual that was convicted under North Carolina law is insufficient for the Court to sustain an enhanced punishment," and at the second punishment hearing, he stated that he was re-urging all of his prior objections. We therefore conclude that this issue was properly preserved for our review.

2009, no pet.) ("Properly authenticated copies of judgments and sentences are admissible at trial, but the relevance of those records showing a prior conviction is conditioned upon the introduction of evidence sufficient to support a finding that the defendant on trial is the person who was previously convicted.").

The State may link the defendant to a prior conviction in a number of different ways, including, (1) an admission or stipulation by the defendant, (2) testimony of a person who was present when the defendant was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish the existence of a prior conviction and the defendant's identity as the person convicted. *Flowers*, 220 S.W.3d at 921-22. As Appellant points out, the most common method of linking a defendant to a prior conviction is to use expert witness testimony to establish that the defendant's fingerprints match that of the person convicted of the prior offense. *Beck*, 719 S.W.2d at 210; *see also Littles v. State*, 726 S.W.2d 26, 28 (Tex.Crim.App. 1984) (en banc). That kind of evidence is lacking here, and Appellant contends that the State failed to meet its burden of linking him to the prior conviction.

Although fingerprint evidence may be a preferred method of linking a defendant to a prior conviction, it is not necessary for the State to produce fingerprint evidence in all cases. Rather, the State may rely on other "identifiers" in the  prior judgment to link the defendant to a prior conviction, such as the defendant's date of birth, street address, and driver's license number. *See e.g.*, *Haas v. State*, 494 S.W.3d 819, 824 (Tex.App.--Houston [14th Dist.] 2016, no pet.) (despite lack of fingerprint evidence, defendant was adequately linked to prior judgment where the defendant bore the same name and birthdate as the individual in the prior judgment, and had the same driver's license number); *Billington v. State*, No. 08-12-00144-CR, 2014 WL 669555, at *3-

4 (Tex.App.--El Paso Feb. 19, 2014, no pet.) (not designated for publication) (despite lack of fingerprint evidence defendant was adequately linked to prior convictions where State introduced evidence that Appellant had the same birth date as the person previously convicted, and the pen packets relating to the prior convictions contained descriptions and photographs that matched Appellant's appearance); *Goode v. State*, No. 02-10-00465-CR, 2011 WL 4502333, at *1 (Tex.App.--Fort Worth Sept. 29, 2011, pet. ref'd) (not designated for publication) (despite lack of fingerprint evidence, defendant was linked to prior convictions where the defendant had the same full name and birth date as set forth in the prior convictions, and also had the same county identification number (CID)--a unique, non-reusable number the jail gives to a person upon jail booking); s*ee also Dominguez v. State*, No. 08-13-00143-CR, 2015 WL 1137742, at *5 (Tex.App.--El Paso Mar. 11, 2015, no pet.) (prior convictions had several identifiers independent of fingerprint evidence, such as the defendant's date of birth and a street address, which tied the conviction to the defendant).

Here, the State presented evidence that Appellant's full name and birth date matched that of the person listed in the prior conviction. In addition, we find it significant that the prior conviction originated in the superior court in Alamance County, and that Appellant previously resided in Burlington, North Carolina, which is partially located in Alamance County.[12] We find it unlikely that there would be more than one "William Geoffrey Thacker" with the same birth date, residing in or near Alamance County, who could have been the subject of the prior conviction.[13] *See Richard v. State*, No. 06-13-00068-CR, 2013 WL 6669388 (Tex.App.--

---

[12] We take judicial notice that Burlington, North Carolina is located in both Alamance and Guilford Counties.

[13] We also note that the trial court was privy to Appellant's unredacted confession in which he admitted that he had been previously convicted of a second-degree sexual assault offense in Alamance County in 2008. Although we do not consider this to be a judicial admission, it supports a finding that Appellant was in fact the person listed in the judgment of conviction introduced into evidence by the State.

Texarkana Dec. 17, 2013, *pet. dism'd,* untimely filed) (mem. op., not designated for publication) (evidence was sufficient to link defendant to prior conviction where documents from prior conviction included the defendant's full name and date of birth, and indicated that both offenses were committed in the same county, making it "unlikely" that the prior offense was committed by someone else); *see also Benton v. State*, 336 S.W.3d 355, 359 (Tex.App.--Texarkana 2011, pet. ref'd) (finding sufficient evidence to link the defendant to the prior conviction, noting that it was unlikely that another individual by the name of Courtney Antoine Benton was convicted in Harris County, Texas, within the time frames listed in the prior convictions).  Accordingly, we conclude that the State met its burden of proving beyond a reasonable doubt that Appellant was the same person who was the subject of the prior conviction.

Appellant's Issue Four is overruled.

**D.  Whether the State's Established that Finality of the Prior Conviction**

Finally, in Issue Six, Appellant contends that the State failed to meet its burden of establishing the finality of the prior North Carolina conviction, and that the trial court therefore erred in relying on the prior conviction to enhance his sentence.  We are compelled to agree.

*1. The State's burden*

A trial court may only use a prior conviction that has become "final" to enhance a defendant's sentence under Section 12.42 of the Penal Code, and it is the State's burden to prove the finality of the prior conviction.  *See Ex parte Pue*, 552 S.W.3d at 230.  And when the records used to establish the defendant's prior conviction demonstrate that the defendant filed an appeal from that judgment of conviction, the burden is on the State to "prove the final disposition" of the defendant's appeal.  *Fletcher*, 214 S.W.3d at 8.  Under Texas law, an appeal is not considered final until a mandate has issued.  *Id.*  Therefore, in order to establish the finality of a prior conviction

that has been appealed in Texas, the State has the burden of providing evidence that a mandate has issued before the conviction can be used to enhance the defendant's sentence. *Id.*; *see also McKinney v. State*, No. 04-17-00495-CR, 2018 WL 2943537, at *3 (Tex.App.--San Antonio June 13, 2018, no pet.) (mem. op., not designated for publication). Further, because the State shoulders this burden in the trial court, an appellate court is not permitted to take judicial notice of the mandate for the first time on appeal, even when that appellate court was the court that issued the mandate. *Fletcher*, 214 S.W.3d at 8-9 (holding Dallas Court of Appeals committed error by taking judicial notice of mandate it had issued from the prior conviction). As the Court of Criminal Appeals has recognized, if an appellate court were permitted to take judicial notice of a mandate for the first time on appeal, this would deprive the defendant of his "right to rebut the State's prima facie showing of finality," and "circumvent [the State's] burden at trial." *Id.*

### 2. The State did not establish the finality of the North Carolina appeal

In the present case, the State presented documents in the trial court indicating that Appellant had filed an appeal from his prior conviction in North Carolina, but admittedly failed to present any evidence to establish the finality of the appeal. However, the State argues that we should take judicial notice that under North Carolina law, a defendant's judgment of conviction automatically becomes "final" when the North Carolina Court of Appeals issues an opinion affirming the defendant's judgment of conviction, and that unlike Texas law, a mandate is not required before the defendant's judgment becomes final. The State then argues that because the North Carolina Court of Appeals issued its opinion in 2009 affirming Appellant's conviction--with no subsequent history noted--we should take "judicial notice" that his case became final at that time.

26

The State's argument, however, is based on a misinterpretation of North Carolina law. The question of when a defendant's conviction becomes "final" under North Carolina law was expressly addressed by the North Carolina Court of Appeals in *State v. Simpson*, 176 N.C.App. 719, 627 S.E.2d 271 (2006). In *Simpson*, the Court of Appeals held that when a defendant appeals a judgment of conviction, the judgment only becomes final after the time expires for "seeking discretionary review" of the Court of Appeals opinion. *Id.*; 176 N.C.App. at 722, 627 S.E.2d at 274. In discussing when that time period expires, the Court cited to Rule 15 of the North Carolina Rules of Appellate Procedure, which provides that a party has 15 days after the Court of Appeals issues its "mandate" to the trial tribunal, following its determination in the case, to file a petition for discretionary review with the North Carolina Supreme Court.[14] N.C.R.APP.P. 15(b). The North Carolina rules further provide that unless the court orders otherwise, the "clerk shall enter judgment and issue the mandate of the court twenty days after the written opinion of the court has been filed with the clerk." N.C.R.APP.P. 32(a). Therefore, as in Texas, it appears that in North Carolina, a mandate must issue from the appellate court before the clock starts running on a party's time period for filing a petition for discretionary review with the North Carolina Supreme Court; and since a judgment cannot become final until after that time period expires, the issuance of a mandate is an integral and necessary step for a judgment to become final in North Carolina.

The burden in Texas is straightforward--when there is an indication there was an appeal from a conviction, a Texas prosecutor is required to present evidence that a mandate has issued before a Texas conviction can be considered final, and then used to enhance the punishment range.

---

[14] The Court in *Simpson* also cited to a North Carolina Supreme Court opinion, which held that a defendant's judgment of conviction did not become final until after the "availability of appeal" had been exhausted, and after the United States Supreme Court denied his petition for writ of certiorari. *Id., citing* to *State v. Zuniga*, 336 N.C. 508, 513, 444 S.E.2d 443, 446 (1994); *see also State v. Coleman*, 181 N.C.App. 568, 571, 640 S.E.2d 784, 786 (2007) (a judgment of conviction is "final" when the availability of appeal has been exhausted, and the time for filing a petition for *certiorari* elapsed or any such petition has been denied).

*Fletcher*, 214 S.W.3d at 8. And the Court of Criminal Appeals has held that the question of whether a prior out-of-state conviction is "final" for purposes of habitual-offender sentence enhancement is to be determined in accordance with Texas law. *See, e.g.*, *Ex parte Pue*, 552 S.W.3d at 235 (holding that Texas law applies in determining the finality of an out-of-state conviction). As hyper-technical as it might appear, the State was required to come forward with evidence that a mandate issued from the North Carolina Court of Appeals in order to satisfy its burden of establishing the finality of Appellant's appeal from his prior conviction. *Fletcher*, 214 S.W.3d at 9.[15]

Because the State failed to present any such evidence in the trial court, Appellant is entitled to a new punishment hearing to determine the finality of his conviction. *Id.*

Appellant's Issue Six is sustained.

## VII. CONCLUSION

We affirm the portion of the district court's judgment adjudicating Appellant's guilt, but reverse the portion of the judgment imposing punishment, and remand this cause for a new punishment hearing to determine the finality of Appellant's prior conviction.

JEFF ALLEY, Chief Justice

March 19, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

---

[15] In *Fletcher*, the court of appeals had taken judicial notice of its own mandate from the prior conviction and reasoned that remanding the case "would be useless" and the law does not require a useless thing. The Texas Court of Criminal Appeals disagreed, noting that the defendant should have the opportunity to rebut any showing of finality. *Fletcher*, 214 S.W.3d at 8-9.