

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD–1360–17

### WALTER FISK, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

KEEL, J., delivered the opinion of the Court in which KELLER, P.J., and HERVEY, RICHARDSON, YEARY, NEWELL, and SLAUGHTER, JJ., joined. KEASLER and WALKER, JJ., concurred.

## O P I N I O N

A defendant convicted of a listed sex offense shall be sentenced to life in prison if he has been previously convicted of "an offense . . . under the laws of another state containing elements that are substantially similar to the elements of" an enumerated Texas offense. TEX. PENAL CODE § 12.42(c)(2)(A), (B)(v). Convictions under the Uniform Code of Military Justice (UCMJ) constitute convictions "under the laws of another state."

*Rushing v. State*, 353 S.W.3d 863, 868 (Tex. Crim. App. 2011). The question here is whether the elements of sodomy with a child as defined by Article 125 of the UCMJ are substantially similar to the elements of sexual assault as defined by the Texas Penal Code.[1] We granted review to determine whether the two-pronged test for substantial similarity should be amended and, if not, whether the lower court correctly applied it. We hold that the first prong of the test should be applied to the elements of the previous conviction, if proven, and that the second prong of the test should be abandoned.

### Section 12.42(c)(2), *Prudholm*, and *Anderson*

Section 12.42(c)(2) mandates a life sentence for defendants who are convicted of a listed sex offense and have been previously convicted of an enumerated sex offense. It reads as follows:

(2) Notwithstanding Subdivision (1), a defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life if:

(A) the defendant is convicted of an offense:

[under Penal Code sections listed in subparagraphs (i) through (iii)]; and

(B) *the defendant has been previously convicted of an offense*:

[under Penal Code sections listed in subparagraphs (i) through (iv)]; or

(v) *under the laws of another state containing elements that are substantially similar to the*

---

[1]Throughout the remainder of this opinion, "Article" refers to the UCMJ and "Section" refers to the Texas Penal Code.

> *elements of an offense listed in Subparagraph*
> *(i), (ii), (iii), or (iv).*

TEX. PENAL CODE § 12.42(c)(2)(A), (B) (emphasis added).

*Prudholm v. State* prescribed a two-pronged test to define the phrase "substantially similar" as used in Section 12.42(c)(2)(B)(v). 333 S.W.3d 590, 594 (Tex. Crim. App. 2011). The first prong required that "the elements being compared . . . must display a high degree of likeness, but may be less than identical." *Id*. The second prong required "that the elements must be substantially similar with respect to the individual or public interests protected and the impact of the elements on the seriousness of the offenses." *Id*. at 595.

*Anderson v. State* reiterated *Prudholm*'s test and emphasized that the second prong itself consisted of two parts. 394 S.W.3d 531, 536 (Tex. Crim. App. 2013). "Courts must first determine if there is a similar danger to society that the statute is trying to prevent. The court must then determine if the class, degree, and punishment range of the two offenses are substantially similar." *Id*. (footnotes and internal quotation marks omitted). The two-pronged test thus consisted of three parts: a high degree of likeness between the elements under comparison, substantial similarity with respect to the interests protected by the statutes, and substantially similar seriousness of the offenses.

To apply the test, *Prudholm* and *Anderson* turned to the statutes defining the offenses as the basis for comparison. *Prudholm*, 333 S.W.3d at 596-98; *Anderson*, 394 S.W.3d at 537. *Anderson* noted that the judgment in the record before it did not set out

any elements of the previous conviction, and it cited no other evidence in the record that proved the elements of the prior conviction. 394 S.W.3d at 534. *Prudholm* cited no evidence that touched on the elements of the previous conviction. Thus, *Prudholm* and *Anderson* had no basis for comparison except for the statutes defining the offenses, and that was the basis for the comparisons they made. *Prudholm*, 333 S.W.3d at 599; *Anderson*, 394 S.W.3d at 539.

This case is distinguishable from *Prudholm* and *Anderson* because the State proved the elements of Appellant's previous conviction under Article 125.

### First Prong: High Degree of Likeness

*Prudholm*

*Prudholm* first compared California's sexual battery statute with Texas's sexual assault statute and observed that sexual battery encompassed "a markedly different range of conduct" than sexual assault. 333 S.W.3d at 599. California's sexual battery statute criminalized "touching" – i.e., physical contact with – an "intimate part" – i.e., sexual organ, anus, groin, or buttocks of any person or the breast of a female – whereas Texas's sexual assault statute criminalized the "'penetration or contact' of a person's 'anus' or 'sexual organ[.]'" *Id*. Moreover, the sexual battery statute explicitly excluded rape and sexual penetration from its scope. *Id*. For those reasons, *Prudholm* held that while the elements of sexual battery and sexual assault might "be similar in a general sense, they do not display the high degree of likeness required to be substantially similar." *Id*.

*Prudholm* next compared California's sexual battery statute with Texas's aggravated kidnapping statute and found it "a closer question." *Id*. at 599. Sexual battery did not measure up, however, because its "conduct element" required "the touching of an intimate part, whereas aggravated kidnapping contain[ed] a specific intent element requiring the intent to commit a non-consensual sex act." *Id*.

*Prudholm* further observed that sexual battery required an "unlawful restraint" but aggravated kidnapping required an abduction, i.e., unlawful restraint plus "the specific intent to prevent the victim's liberation[.]" *Id*. The Court held that the restraint elements did "not display a high degree of likeness" because of the intent component of abduction. *Id*.

<u>Anderson</u>

The issue in *Anderson* was whether North Carolina's indecent liberties statute was substantially similar to indecency with a child. 394 S.W.3d at 533. *Anderson* determined that the court of appeals failed to "consider the wide variety of conduct covered by the North Carolina offense that is excluded in the Texas offense." *Id*. at 538. The indecent liberties statute was not substantially similar to the indecency with a child statute because indecent liberties "encompasses a markedly different range of conduct than" indecency does and "covers a *significant* amount of conduct that the Texas offense does not." *Id*. at 539. *Anderson* noted that indecent liberties criminalized "almost any conduct, if performed to fulfill the actor's sexual gratification[.]" *Id*. at 538. Examples were

"kissing a minor's face, french kissing a minor, and hugging the legs of a minor." *Id*. at 538-39 (footnotes omitted). Such acts would not constitute indecency with a child under the Texas statute "even if performed to 'arouse or gratify the sexual desire' of the actor" because they are not sexual contact or exposure. *Id*. at 539.

*Anderson* sought to illustrate the meaning of "high degree of likeness" by reference to a Venn diagram. *Anderson*, 394 S.W.3d at 535 n.17. "The two circles need not form a perfect overlap, but they must overlap significantly and share a large intersection area. ... [I]f one statute punishes any 'intimate' touching of a child, while a second statute punishes only the touching of the anus or genitals, the statutes are not substantially similar." *Id*. This illustration suggests a bi-lateral examination of the statutes for overlap. That is, according to *Anderson*, if either statute is broader than the other, then the requirement for a high degree of likeness is not met.

The Venn diagram approach is not supported by *Prudholm*, which asked only whether the out-of-state statute was broader than the Texas statute. 333 S.W.3d at 599. Nor is it supported by the language of Section 12.42(c)(2) which asks whether the defendant was previously convicted of an offense under laws containing elements substantially similar to an offense under a given Texas penal statute. An offense under a penal statute may not encompass the whole statute; it may be only one offense of many under the statute. If the defendant was previously convicted of an offense under laws containing elements that are substantially similar to the elements of an offense under a

given Texas penal statute, then the requirements of Section 12.42(c)(2) are met. We disavow *Anderson*'s suggestion that the out-of-state statute and the Texas statute must substantially overlap in order to meet the requirement of a high degree of likeness.

This Case

Relying on *Prudholm* and *Anderson*, the court of appeals in this case held that sodomy under Article 125 outlawed "distinctively different conduct" than does sexual assault under Section 22.011. *Fisk v. State*, 538 S.W.3d 763, 774 (Tex. App. — San Antonio 2017). The court noted that Article 125 prohibited bestiality and consensual sodomy between adults, but Section 22.011 does not. *Id*. It also observed that Section 22.011 outlaws genital-to-genital contact or penetration, acts that were not covered by Article 125. *Id*. Even if the court restricted its consideration to "the facts as plead in the charging instrument" it concluded that the differences between Article 125 and Section 22.011 were still significant. *Id*. The lower court thus correctly applied *Prudholm* and *Anderson*. But given the record in this case, there is no need to analyze Article 125's definitions of offenses for which Appellant was not convicted and on which the State does not rely for enhancement.

The State proved Appellant's previous sodomy conviction with a certified copy of the court martial order specifying that Appellant was guilty of "sodomy with [DG], a child under the age of 16 years." The State also offered a copy of Article 125 and the testimony of an expert on military law. According to the testimony and the documentary

evidence, Article 125's sodomy with a child consisted of two elements, (1) unnatural carnal copulation (2) with a child under age 16. "Unnatural carnal copulation" under Article 125 meant to take into one's mouth or anus the sexual organ of another person or an animal or to place one's sexual organ into the mouth or anus of another person or an animal "or to have carnal copulation in any opening of the body, except the sexual parts, with another person; or to have carnal copulation with an animal." UCMJ Article 125. "Penetration, however slight," sufficed for commission of the offense. UCMJ Article 125.

Section 22.011 states that a person commits sexual assault if he causes the penetration of the anus or mouth of a child under age 17 with his sexual organ or causes the sexual organ of a child to penetrate the mouth or anus of another. TEX. PENAL CODE § 22.011. The fact that Article 125 also defined other ways of committing sodomy that are not found in Section 22.011 and that are not implicated by Appellant's previous conviction – i.e., bestiality and sodomy between consenting adults – is irrelevant. It is also irrelevant that Section 22.011 criminalizes other ways of committing sexual assault that are not found in Article 125. The only issue is whether a conviction for an offense under Article 125 is a conviction for an offense under laws "containing elements that are substantially similar to the elements of an offense" under Section 22.011.

In a case like this where the elements of the previous conviction are proven, it is unnecessary to analyze the entirety of the other state's statutory scheme for substantial

similarity. Another jurisdiction's arrangement and organization of its penal statutes has no bearing on whether a defendant was previously convicted of an offense under laws containing elements that are substantially similar to the elements of a designated Texas offense. That kind of analysis is necessary only if the record fails to prove the nature of the previous conviction.

Appellant argues that sodomy with a child under Article 125 is broader than sexual assault of a child because, besides outlawing carnal copulation with the mouth and anus, it also outlaws "carnal copulation in any opening of the body, except the sexual parts," which Appellant argues is not a crime in Texas. That is incorrect. Section 21.11 prohibits touching a child with the genitals or any touching of a child's genitals if done with intent to arouse or gratify sexual desire. TEX. PENAL CODE § 21.11. The phrase "carnal copulation" and its explanation in Article 125 necessarily implicate intent to arouse or gratify sexual desire. Therefore, Appellant's sodomy conviction was under laws containing elements substantially similar to the elements of sexual assault or indecency with a child, both of which are enumerated offenses under Section 12.42(c)(2)(B)(ii). But even if carnal copulation in any other opening of the body except the sexual parts was not a crime in Texas, a finding of substantial similarity does not require identical elements, it requires only elements that "display a high degree of likeness," and it is not necessary that a person guilty of crime under a foreign law would also be guilty under Texas law. *Prudholm*, 333 S.W.3d at 594-95.

*Ex parte White*, 211 S.W.3d 316 (Tex. Crim. App. 2007), is an example of non-identical statutes displaying substantial similarity. *Prudholm*, 333 S.W.3d at 593. In *White*, the defendant had been previously convicted in Delaware of felony unlawful sexual contact. 211 S.W.3d at 317. *White* held that unlawful sexual contact was substantially similar to indecency with a child. *Id*. at 318. *Prudholm* pointed out that there were differences between the two offenses, one being the required intent. 333 S.W.3d at 593. A conviction under the Delaware statute could be founded on an intent "to embarrass or humiliate the victim," a state of mind that would not sustain a Texas conviction for indecency with a child. *Id*. at 594 n.15. *Prudholm* nevertheless approved *White*'s holding; "the difference in the specific intent shows that, while an element of the foreign offense can be proved by a fact that would be insufficient to prove the Texas element, the elements may still be substantially similar." 333 S.W.3d at 594 (footnote omitted).

With respect to children, Article 125 contains elements that are substantially similar to the elements of sexual assault of a child under Section 22.011. They both prohibit the penetration of a child's mouth or anus by a person's sexual organ or the penetration of a person's mouth or anus by a child's sexual organ. The one-year age difference in the definition of child – 16 vs. 17 – does not defeat the substantial similarity. *See White*, 211 S.W.3d at 318. Nor does Article 125's inclusion of carnal copulation "in any opening of the body" defeat a finding of substantial similarity because its prohibitions

against sodomy with a child do not encompass a markedly different range of conduct than the Texas offenses listed in Section 12.42.

Appellant also argues that the affirmative defenses found in Section 22.011 but not found in Article 125 defeat a finding of substantial similarity. But defenses are not elements, *see* Section 1.07(22), and elements are the only basis of comparison referenced by Section 12.42(c)(2)(B)(v).

We hold that on this record Appellant was previously convicted of an offense under laws, i.e., Article 125, containing elements with a high degree of likeness to the elements of sexual assault of a child as defined by Section 22.011. It thus meets the first prong of the *Prudholm* test for substantial similarity.

## **Justification for and Application of Second Prong**

The *Prudholm* test's second prong looked at the interests protected by the offenses and their relative seriousness. 333 S.W.3d at 595. *Prudholm* maintained that the second prong was necessary because the first prong left a "critical question" unanswered, that is, "the respect in which the elements must display a high degree of likeness." *Id*. at 594. Given that the phrase "element of offense" is legally defined, the existence of *Prudholm*'s "critical question" is dubious. *See* TEX. PENAL CODE § 1.07(22). In spite of acknowledging that definition, however, *Prudholm* nevertheless posited that "elements could be substantially similar with respect to general characteristics such as terminology, function, and type of element, or with respect to specific characteristics such as the

seriousness of violent or sexual aspects." 333 S.W.3d at 594 (footnoting definition of "element of offense"). But Section 12.42(c)(2) does not refer to terminology, function, type, etc.; it simply requires a defendant to have been previously convicted under the laws of another state containing elements that are substantially similar to those of an enumerated Texas offense. The first prong of *Prudholm*'s test addressed that requirement by defining "substantially similar." The further inquiry into how elements might be substantially similar was unnecessary, but *Prudholm* answered it anyway by turning to Section 1.02.

Section 1.02 states that the general purposes of the Texas Penal Code are "to establish a system of prohibitions, penalties, and correctional measures to deal with conduct that unjustifiably and inexcusably causes or threatens harm to those *individual or public interests* for which state protection is appropriate." TEX. PENAL CODE § 1.02 (emphasis added). To serve those purposes, Section 1.02 provides that the code shall be construed to achieve certain objectives, one of which, relied upon by *Prudholm*, is "to prescribe penalties that are proportionate to the *seriousness of offenses* and that permit recognition of differences in rehabilitation possibilities among individual offenders." TEX. PENAL CODE § 1.02(3) (emphasis added). *Prudholm* thus built the second prong of its test with language from Section 1.02's general purposes ("individual or public interests") and its third objective ("seriousness of offenses"). 333 S.W.3d at 595.

*Prudholm* erred in using language from Section 1.02's definition of general

purposes as a basis for statutory construction because those purposes are not included among the objectives by which the code is to be construed. The objectives by which the code is to be construed are numbered and listed; "individual or public interests" are not found among them. *See* TEX. PENAL CODE § 1.02.

Furthermore, the application of the protected interests part of *Prudholm*'s test is so arbitrary as to be unworkable because a statute may serve many interests. In this case, for example, Article 125 served such diverse interests as securing the nation's defense and discouraging non-procreative sexual activity, bestiality, sexual abuse of children, and forcible sodomy of adults. The lower court focused on the prevention of non-procreative sexual activity and downplayed Article 125's role in also discouraging the sexual exploitation of children, demonstrating the arbitrariness of identifying the protected interests of a given penal provision. *See Fisk*, 538 S.W.3d at 775. *Prudholm* and *Anderson* also demonstrated the arbitrariness of identifying such interests.

For example, *Prudholm* maintained that the interests protected by the unlawful restraint element of California's sexual battery offense differ from the interests protected by aggravated kidnapping's abduction element because the unlawful restraint element protects liberty interests but the abduction element protects "against the considerable risk of death or serious bodily injury involved in an abduction." 333 S.W.3d at 599. But both offenses protect liberty interests; aggravated kidnapping's additional protected interests of life and freedom from serious bodily injury do not annul its interest in protecting liberty;

and outlawing unlawful restraint also serves to discourage abduction by nipping it in the bud. Considered in that light, sexual battery and aggravated kidnapping protect the same interests.

*Anderson* claimed that Texas's purpose in outlawing indecency with a child was to protect children from "very specific sexual bad acts," but North Carolina's indecent liberties offense was "more concerned with punishing the defendant's immoral, improper, indecent, or lewd state of mind." 394 S.W.3d at 540 (internal quotation marks omitted). One could argue just as well, however, that the statutes protect identical interests because they both protect children from sexual exploitation.

As for the second part of the second prong – the seriousness of the offense – that aspect of *Prudholm*'s test finds no support in the language of Section 12.42(c)(2), and it is unnecessary to re-construe the meaning of Section 12.42(c)(2) in accordance with Section 1.02(3) every time a sex offender is enhanced with a previous out-of-state conviction. The Legislature has decided that a life sentence is proportionate for sex offenders who have certain types of previous convictions. If an offender has been previously convicted of an offense under laws containing elements that are substantially similar to those of an enumerated Texas offense, then the statute calls for a life sentence; it does not matter whether the foreign offense carries a substantially similar range of punishment. If the Legislature had intended such a requirement, it would have written it into Section 12.42(c)(2). It did not. If the elements are substantially similar, the requirements of

Section 12.42(c)(2) are satisfied; inquiry into the seriousness of the offenses is unjustified.

## Conclusion

The first prong of *Prudholm*'s test was met because the State proved that Appellant was previously convicted of an offense under the laws of another state containing elements that displayed a high degree of likeness to those of an offense enumerated by Section 12.42(c)(2). The second prong of *Prudholm*'s test, however, was based on faulty reasoning and was unworkable and unnecessary. We therefore overrule *Prudholm* and *Anderson* to the extent that they imposed the second prong of their test for substantial similarity. The interests of *stare decisis* are undisturbed. *See Febus v. State*, 542 S.W.3d 568, 575-76 (Tex. Crim. App. 2018) (following poorly reasoned or unworkable precedent does not serve the goals of *stare decisis*).

We reverse the judgment of the court of appeals and affirm the trial court's judgments.

Delivered: June 5, 2019

Publish