

# NUMBER 13-23-00325-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**EUGENE L. REID,**                                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                              **Appellee.**

## ON APPEAL FROM THE 319TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Benavides**

A jury convicted appellant Eugene L. Reid of murder, a first-degree felony, and sentenced him to sixty-five years' imprisonment. *See* TEX. PENAL CODE ANN. § 19.02(b)(1). In what we construe as six issues, which we have reorganized, Reid

argues: (1) the evidence was legally and factually insufficient[1] to support his conviction; (2) his trial counsel's performance was constitutionally deficient; (3) the State committed a *Brady* violation; (4) the trial court erred by denying his requested instruction on a lesser-included offense; (5) the trial court erred by denying his request for a mistrial; and (6) the trial court subjected him to cruel and unusual punishment by denying his request to leave the courtroom during victim impact statements. We affirm.

## I.    BACKGROUND

In the early morning hours of May 13, 2021, Richard Gonzales was shot once in the head outside of the Lucky Libra Lounge in Corpus Christi, Texas. The gunshot wound, located approximately three centimeters behind his right ear, proved fatal.

Gonzales went to the bar that night with his sisters Edith and Mary. Consistent with bar policy, Gonzales was patted for weapons before being admitted. Dustin Radke, who conducted the pat down, testified that Gonzales was not carrying a weapon, and there was no evidence presented at trial to suggest otherwise. Radke also testified that bar employees, including bouncers, DJs, and bartenders, regularly carried firearms while at work. Reid was the head bouncer working at the bar that night.

One of the patrons at the bar that night was Lynette Durbin, a former high school

---

[1] It is well-established that we no longer conduct an independent factual sufficiency review in cases like this one that do not involve an affirmative defense. *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) ("Under *Brooks v. State*, we review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single sufficiency standard set out in *Jackson v. Virginia*."); *Matamoros v. State*, 500 S.W.3d 58, 61 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.); *cf. Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015) ("Affirmative defenses may be evaluated for legal and factual sufficiency, even after this Court handed down its opinion in *Brooks v. State* . . . ."). Accordingly, we do not address Reid's arguments that the evidence was factually insufficient and focus solely on the legal sufficiency of the evidence to support his conviction.

girlfriend of Gonzales's. Durbin began flirting with Gonzales, and this apparently upset Vernon Duhart, the bar's owner. Duhart instructed Reid to kick Gonzales out of the bar. Radke, Edith, Mary, and another bar patron, Benjamin Macias, all agreed that Reid began shoving Gonzales as he escorted Gonzales out of the bar. Their account was confirmed by surveillance footage taken from inside the bar.

Once outside, and out of view of the surveillance cameras, a physical altercation occurred between Reid and Gonzales. Gonzales punched Reid. At this point, Macias attempted to intervene and stepped between the two men. According to Macias, Reid was standing behind him when he heard a gun discharge. Radke, Edith, and Mary all testified that they witnessed Reid pull out a firearm and shoot Gonzales in the head. According to Mary, before Reid shot Gonzales, she heard her brother tell Reid, "Shoot me, you b****-a** [n]****."

Reid fled the scene. Police went to Reid's last known residence on the morning of May 13, and the woman who answered the door denied them entry. The police obtained an arrest warrant for Reid and asked the U.S. Marshals Service to apprehend Reid. The marshals made contact with Reid's girlfriend on May 14, and she admitted that she purchased a plane ticket for Reid and that he flew to New York City on May 13. Reid was apprehended approximately six months later in Boston, Massachusetts by the U.S. Marshals Service.

The former Nueces County medical examiner testified that the cause of death was a gunshot wound to the head and the manner of death was homicide. The medical examiner also testified that there was no gunshot stippling observed on Gonzales.

According to the medical examiner, the absence of stippling indicated that the shooter was standing at least two and half feet away from Gonzales when the gun was fired.

Reid did not testify. During closing arguments, Reid's counsel argued that the State had failed to prove that Reid was the shooter. Consistent with this line of argument, Reid did not request a jury instruction on self-defense, and none was given. *See Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) ("Self-defense is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct."). Reid did, however, request a jury instruction on the lesser-included offense of manslaughter, which was denied.

The jury returned a guilty verdict and assessed punishment as indicated above. Reid did not file a motion for new trial, and this appeal ensued.

## II. LEGAL SUFFICIENCY

Reid first contends that the trial court erred in denying his motion for a directed verdict, which we treat as a challenge to the sufficiency of the evidence. *See Garza v. State*, 398 S.W.3d 738, 743 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd).

### A. Standard of Review & Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a legal sufficiency review, "we consider all the evidence in the light most

4

favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). We defer to the jury's role as the factfinder, which includes "resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007)). We consider "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray*, 457 S.W.3d at 448 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

We measure the sufficiency of the evidence against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* A hypothetically correct charge in this case would instruct the jury to find Reid guilty of murder if it found beyond a reasonable doubt that Reid intentionally or knowingly caused the death of Gonzales by shooting him with a firearm. *See* TEX. PENAL CODE ANN. § 19.02(b)(1).

5

**B.    Analysis**

The State asserts that Reid waived this issue because it was inadequately briefed. Other than providing a standard of review (some of which is no longer good law), Reid's argument regarding this issue is contained within the following three sentences:

> Not a single witness, not a detective, not an expert, and not even an accomplice witness testified that [Reid] pointed a firearm at the deceased and pulled the trigger. All the evidence presented demonstrated was that there was a struggle. As such, this Court should find that there was legally and factually insufficient evidence to support the jury's verdict, and the conviction of [Reid] should be reversed and a verdict of acquittal entered.

As the State correctly notes, Reid failed to support his argument "with appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.(1)(i). Moreover, Reid failed to provide a statement of facts that includes any of the evidence that was presented at trial. *See id.* R. 38.1(g). Instead, his brief simply states, "After four days of trial, the jury found [Reid] guilty." It is not even clear from Reid's brief which element(s) of the offense he is challenging. "As the Texas Court of Criminal Appeals has emphasized, an appellate court has no obligation to construct and compose issues, facts, and arguments with appropriate citations to authorities and the record for the appellant." *Chaves v. State*, 630 S.W.3d 541, 555 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017)). And it is well-settled that an inadequately briefed issue, even a sufficiency challenge, presents nothing for review. *See Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003) (finding complaint waived because appellant's brief failed to adequately apply the law to the facts); *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (finding sufficiency challenge waived because appellant failed to "specifically argue how the evidence is insufficient under" the standard

of review); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992) (finding complaint inadequately briefed where appellant failed to provide citation to any authority supporting his complaint).

Nonetheless, assuming without deciding that this issue has been properly preserved, we conclude that the evidence supports the jury's verdict. "It is both a common-sense inference and an appellate presumption that a person intends the natural consequences of his acts . . . and that the act of pointing a loaded gun at someone and shooting it toward that person at close range demonstrates an intent to kill." *Ex parte Thompson*, 179 S.W.3d 549, 556 n.18 (Tex. Crim. App. 2005) (citations omitted). Here, contrary to Reid's conclusory and unsupported statement in his brief, three eyewitnesses testified that Reid drew his firearm, pointed it at Gonzales, and shot him in the head.[2] *See Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016) (finding evidence sufficient to support murder conviction where the evidence established, among other facts, that appellant "shot Hernandez in the head and back at least nine times"); *Felder v. State*, 848 S.W.2d 85, 90 (Tex. Crim. App. 1992) (holding that the intent to kill could be inferred from location and depth of a stab wound). Additionally, the medical examiner testified that Gonzales died from a gunshot wound to the head. *See* TEX. PENAL CODE ANN. §§ 6.04(a) (providing that "[a] person is criminally responsible if the result would not have occurred but for his conduct"), 19.02(b)(1) (requiring the defendant's conduct to

---

[2] We remind Reid's appellate counsel that he has a duty of candor to the Court that includes accurately representing the appellate record. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.03(a)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G., app. A; TEXAS STANDARDS OF APPELLATE CONDUCT, Lawyer's Duties to the Court 3 (providing that "[c]ounsel should not misrepresent, mischaracterize, misquote, or miscite the factual record").

cause the victim's death). Finally, the evidence established that Reid fled the scene, he took an unplanned flight to New York City the next day, and he was eventually apprehended in Boston by the U.S. Marshals Service six months later. *See Lopez v. State*, 672 S.W.3d 915, 925 (Tex. App.—Corpus Christi–Edinburg 2023, pet. ref'd) ("In addition, appellant left the scene prior to the arrival of police or the ambulance, which is also suggestive of guilt." (citing *Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007))).

Viewing this evidence in the light most favorable to the verdict, a reasonable juror could have found the essential elements of the offense beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 19.02(b)(1). Reid's first issue is overruled.

## III.     INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Reid argues that he was denied his constitutional right to reasonably effective assistance of counsel because his trial counsel failed to properly seek a continuance and failed to object to an enhancement paragraph.

## A.     Standard of Review & Applicable Law

The United States Constitution and the Texas Constitution guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see* TEX. CODE CRIM. PROC. ANN. art. 1.051. We evaluate claims of ineffective assistance of counsel using the two-pronged test from *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland*). An appellant is required to show (1) "that counsel's performance was deficient," and (2) "the deficient performance prejudiced"

appellant. *Strickland*, 466 U.S. at 687. Failure to show either deficient performance or prejudice will defeat the ineffectiveness claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Morrison v. State*, 575 S.W.3d 1, 24 (Tex. App.—Texarkana 2019, no pet.). Accordingly, a court may bypass the first prong, and decide the issue solely on the prejudice prong. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

"In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Such a showing "must be firmly founded in the record." *Thompson*, 9 S.W.3d at 813. "Trial counsel should generally be given an opportunity to explain his actions before being found ineffective." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). "Thus, if the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021); *Thompson*, 9 S.W.3d at 813 (describing it as "a strong presumption"). "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Johnson*, 624 S.W.3d at 586 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Although a single egregious error may constitute ineffective assistance as a matter of law, we generally disregard isolated errors that are not indicative of the overall representation. *Lopez*, 343

S.W.3d at 143; *see Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990) ("Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination.").

Yet, even if the performance was deficient, such an error does not warrant setting aside the judgment if there has been no prejudicial effect on the outcome. *Strickland*, 466 U.S. at 691. "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695–96. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. The test for prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In conducting our analysis, we consider the totality of the evidence before the factfinder. *Id.* at 695.

**B.    Continuance**

Reid first complains that trial counsel[3] failed to file a sworn motion seeking a continuance after the State produced discovery on the eve of trial. Reid claims that body

---

[3] Reid was represented by two attorneys at trial.

camera footage and "DIMS records"[4] were produced the day before the guilt-innocence phase began, this evidence was prejudicial to him, and the late notice impaired his ability to prepare a defense. Although Reid's trial counsel made an oral motion to continue the trial, Reid faults them for not filing the proper written motion. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03 ("A criminal action may be continued on the written motion of the State or the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion."), 29.08 ("All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance.").

There are several problems with Reid's claim. First, his timeline is incorrect. The record reveals that the evidence was given to his counsel approximately two weeks before trial began. Next, it is clear from the proceedings that counsel raised the objection at Reid's insistence but disagreed that a continuance was necessary: "[Reid's] concern is that the evidence that was held back is prejudicial. It's affecting his ability to continue today. He wants more time. I've told him, no, we've already selected the jury. We need to go forward with it." Although Reid may have subjectively believed that the evidence was prejudicial to his defense, based on the limited record before us, we presume that counsel reviewed the evidence and determined that a continuance was unwarranted because either the evidence was inconsequential or because two weeks was sufficient time to prepare for its possible introduction at trial. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical

---

[4] "DIMS" refers to a District Attorney Information Management System.

11

or strategic decision[-]making as to overcome the presumption that counsel's conduct was reasonable and professional.").

Reid has also failed to show that, had counsel filed the proper motion, the trial court would have erred by denying the motion. *See Ex parte Parra*, 420 S.W.3d 821, 824–25 (Tex. Crim. App. 2013) ("In order to succeed with an ineffective-assistance-of-counsel claim based on counsel's failure to object, one 'must show that the trial judge would have committed error in overruling such objection.'" (quoting *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011))). We review a trial court's decision denying a motion for continuance under an abuse of discretion standard. *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006). An appellant establishes that the trial court abused its discretion by showing that he was actually prejudiced by the denial of his motion because his counsel had inadequate time to prepare. *Gallo v State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). Here, other than making conclusory statements at trial and in his brief, Reid has failed to explain how this evidence was prejudicial to his defense. What exactly did these recordings depict, what information was contained in the "DIMS records," and how did this evidence alter the evidentiary landscape at trial? Without this information, it is not possible to gauge whether any delay in disclosing these materials prejudiced Reid. Therefore, his ineffective assistance claim is not "firmly founded in the record." *Thompson*, 9 S.W.3d at 813.

Further, the trial court did not deny the motion on a procedural default. Instead, the trial court entertained the oral motion on the merits and simply disagreed that a continuance was necessary under the circumstances. In other words, it seems likely that

12

the trial court would have denied the continuance even if counsel had filed the proper motion. If the denial of the motion was not based on counsels' alleged error, we fail to see how Reid was prejudiced by counsels' performance. *See Strickland*, 466 U.S. at 694.

Finally, Reid has also failed to explain how a continuance would have changed the outcome of the trial, especially when three eyewitnesses provided uncontradicted testimony that Reid shot Gonzales in the head. *See id.* at 696; *Adekeye v. State*, 437 S.W.3d 62, 75 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (concluding that even if counsel's performance was deficient, appellant failed to show prejudice because "the evidence of appellant's guilt was overwhelming"). In sum, Reid has not met either of the *Strickland* prongs on his first claim of ineffective assistance.

## C.    Enhancement Paragraph

Reid also claims that counsel were ineffective because they failed to object to the enhancement paragraph alleging that Reid was previously convicted of a felony in Kansas. Reid does not dispute the existence of his prior conviction or that the offense is classified as a felony in Kansas. Rather, he contends that, under Texas law, the same offense is a misdemeanor, and therefore, the conviction did not qualify for enhancement purposes.

A defendant convicted of a first-degree felony will have their minimum sentence enhanced to fifteen years' imprisonment upon a showing "that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a)." TEX. PENAL CODE ANN. § 12.42(c)(1). For purposes of enhancement, "any conviction not obtained from a prosecution under [the Texas Penal Code] shall be

classified as" a third-degree felony "if imprisonment in the Texas Department of Criminal Justice or another penitentiary is affixed to the offense as a possible punishment." *Id.* § 12.41(1). The Texas Court of Criminal Appeals has described § 12.41(1) as a tool for classifying "those convictions obtained either under our former penal code or under those penal codes of other jurisdictions." *Betancourt v. State*, 590 S.W.2d 487, 489 (Tex. Crim. App. [Panel Op.] 1979).

During the punishment phase, the State presented a certified copy of a court document from Kansas showing the following information: on April 11, 2005, Reid pleaded guilty to the felony offense of obstructing official duty; the offense was punishable by a term of imprisonment ranging from 15–17 months; and Reid was sentenced to sixteen months imprisonment in the Kansas Department of Corrections.[5] Reid pleaded "true" to the enhancement allegation.

Citing *Rushing v. State*, 353 S.W.3d 863 (Tex. Crim. App. 2011) and *Fisk v. State*, 574 S.W.3d 917 (Tex. Crim. App. 2019), Reid argues that "[a] court must determine whether a conviction under the laws of another state [is] substantially similar enough to the State of Texas's statute for that conviction to be used for the purposes of enhancement." Building on this premise, Reid argues that the Kansas offense is

---

[5] The State also introduced evidence that Reid was finally convicted of two felonies in Rhode Island. The prosecutor commented that those convictions were "not enhanceable" because Reid only received probation in each case, and thus, they were not offered for that purpose. However, whether Reid received probation in those cases was immaterial; under the plain language of the statute, it only mattered whether he could have been sentenced to a Rhode Island penitentiary for committing those offenses. *See* TEX. PENAL CODE ANN. § 12.41(1); *see also Newsome v. State*, No. 09-17-00122-CR, 2018 WL 1097644, at *2 (Tex. App.—Beaumont Feb. 28, 2018, no pet.) (mem. op., not designated for publication) ("Section 12.41(1) applies to out-of-state convictions regardless of whether the convicting jurisdiction calls the offense a felony, or whether the appellant received actual time in a penitentiary as a punishment.").

equivalent to the Texas offense of interference with public duties, which is a class B misdemeanor. *See* TEX. PENAL CODE ANN. § 38.15. According to Reid, his counsel should have objected to the enhancement allegation on this basis and instructed him not to plead true to the allegation.

Reid's reliance on *Rushing* and *Fisk* is misplaced because those cases dealt with enhancement under § 12.42(c)(2), whereas Reid's punishment was enhanced under § 12.42(c)(1). *See Rushing*, 353 S.W.3d at 864; *Fisk*, 574 S.W.3d at 919. Section 12.42(c)(2) only concerns convictions for certain offenses (murder is not one of them) and allows for enhancement if the defendant was previously convicted "under the laws of another state containing elements that are substantially similar to the elements of" certain enumerated Texas offenses. TEX. PENAL CODE ANN. § 12.42(c)(2)(A), (B)(v); *see, e.g.*, *Fisk*, 574 S.W.3d at 919 ("The question here is whether the elements of sodomy with a child as defined by Article 125 of the UCMJ are substantially similar to the elements of sexual assault as defined by the Texas Penal Code."). There is no corresponding language in § 12.42(c)(1) that requires a comparison between the elements of the out-of-state conviction and a Texas offense. *See* TEX. PENAL CODE ANN. § 12.42(c)(1). Instead, the operative language requires only that "the defendant has previously been finally convicted of a felony other than a state jail felony." *Id.* An out-of-state conviction is considered a third-degree felony for enhancement purposes "if imprisonment in the Texas Department of Criminal Justice *or another penitentiary* is affixed to the offense as a possible punishment." *Id.* § 12.41(1) (emphasis added).

15

Here, the evidence presented by the State established that Reid was finally convicted of an offense in Kansas that was punishable by imprisonment.[6] *See id.*; *Trotti v. State*, 698 S.W.2d 245, 246 (Tex. App.—Austin 1985, pet. ref'd) (classifying prior conviction for offense of "house breaking and larceny" in South Carolina as third-degree felony under § 12.41(1) because confinement in penitentiary was affixed to offense as possible punishment); *see also Smith v. State*, No. 03-21-00368-CR, 2023 WL 3235933, at *3 (Tex. App.—Austin May 4, 2023, no pet.) (mem. op., not designated for publication) (finding appellant's prior conviction in Georgia to be a third-degree felony for enhancement purposes because the offense was punishable in Georgia by "imprisonment in a penitentiary"). Therefore, because the enhancement was proper, Reid has failed to demonstrate that the failure of his counsel to object to the enhancement allegation was error, let alone objectively deficient. *See Ex parte Parra*, 420 S.W.3d at 824–25. Reid's second issue is overruled.

## IV. *BRADY* VIOLATION

Reid next argues that the State committed a *Brady* violation.

## A. Applicable Law

Under *Brady v. Maryland* and its progeny, "the State is required to disclose evidence known to it that is favorable or material to a defendant's guilt or punishment, whether or not the defendant requests it." *Fears v. State*, 479 S.W.3d 315, 327 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd) (citing *Strickler v. Greene*, 527 U.S. 263,

---

[6] Even if there is something to the general idea that we should defer to Texas's classification of a substantially similar out-of-state offense under § 12.41(1), we have compared the two statutes, and despite their seemingly analogous titles, we do not find their elements to be substantially similar.

280 (1999)); *see Brady v. Maryland*, 373 U.S. 83, 87 (1963). "This duty also requires disclosure of favorable evidence known only to the police." *Id.* However, "the State does not have such a duty if the defendant was actually aware of the exculpatory evidence or could have accessed it from other sources." *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011) (collecting cases).

To prevail on a *Brady* claim, the appellant must show by a preponderance of the evidence that the State suppressed evidence, the suppressed evidence was favorable to the appellant, and the suppressed evidence was material to the outcome of the trial. *See Strickler*, 527 U.S. at 281–82; *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006); *Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005) (requiring the appellant to make these showings "by a preponderance of the evidence"). Evidence is favorable if it is exculpatory or impeaching. *Ex parte Reed*, 271 S.W.3d 698, 726 (Tex. Crim. App. 2008). "Evidence is material to guilt or punishment 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 727 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Bagley*, 473 U.S. at 682).

**B.  Analysis**

According to Reid, "[t]he State did not fulfill its duties under [*Brady* because it] fail[ed] to use due diligence to subpoena or interview [a] witness, and instead the burden was shifted to [Reid] to obtain [his] own exonerating evidence."

During a pretrial hearing that occurred on June 26, 2023, one of Reid's attorneys asked for a continuance based on a statement in a police report that counsel said he "discovered [that] morning." In the report, Durbin told a police officer that she had recorded the incident on her cellphone. She also told the officer that she was no longer in possession of the phone and had given it to a friend. Counsel complained that the police "never grabbed this phone in order to analyze it to determine whether there was anything there that would be beneficial for the State or exonerating evidence for [his] client." Although counsel agreed that the cellphone was never in the State's possession, he nonetheless believed that this was a "*Brady* issue" because the officer who took the report "didn't follow through" on searching for the phone.

The State responded that Reid's counsel "had plenty of time to investigate this matter" but neglected it until the eve of trial. One prosecutor said that Reid's counsel had been in possession of the police report "for at least three months," and another prosecutor later corrected that statement and said that Reid's counsel had been in possession of the report "since 2021." Reid's counsel did not offer a contrary timeline or clarify when he received the police report. The trial court asked the State if it intended to call Durbin as a witness, and when the State responded in the negative, the trial court instructed Reid's counsel to "[g]et a subpoena out for Durbin and bring her in with a subpoena duces tecum for her phone, if it still exists." Reid's counsel did not believe he could locate Durbin and have the phone analyzed without a continuance of "one or two weeks." Although the trial court denied the motion for a continuance, the trial was ultimately reset and began two weeks later, on July 10, 2023.

18

Reid subpoenaed Durbin, and she appeared and testified at trial. Durbin said that she "was heading towards [her] car until [she] heard the gunshot." At that point, she "turned around" and saw Gonzales laying on the ground. She agreed that she was "extremely drunk" that night. As far as recording the incident on her cellphone, she categorically denied that any such recording ever existed or that she told the police that such a recording existed. Instead, she said that she had placed her cellphone on the ground while she was tending to Gonzales and had asked an officer to retrieve it for her after she was placed in the back of a police vehicle.

Reid has not satisfied any of the elements of a *Brady* claim. As a threshold matter, the State cannot suppress evidence that never existed in the first instance. *See Ellsworth v. Warden*, 333 F.3d 1, 6 (1st Cir. 2003) (en banc) (explaining that, in the context of a *Brady* claim, the applicant's writ of habeas corpus should be denied if it is shown that the allegedly exculpatory evidence "never existed"). On the night in question, Durbin, who, by her own account, was extremely intoxicated, allegedly told a police officer about the existence of the recording. However, according to the State, Durbin never mentioned the recording in a subsequent interview with police. In any event, while under oath, Durbin steadfastly denied that she ever made a recording of the incident or that she previously said otherwise. Given the substantial uncertainty surrounding the recording, Reid has failed to prove by a preponderance of the evidence that the allegedly suppressed evidence even existed in the first place. *See id.*; *Keeter*, 175 S.W.3d at 760.

But even if we assume that the recording exists (or existed at one time), Reid has not pointed to any conduct by the State that would amount to suppression of the

19

recording. Contrary to his suggestion on appeal, "the state is not required to seek out exculpatory evidence independently on appellant's behalf, or furnish appellant with exculpatory or mitigating evidence that is fully accessible to appellant from other sources." *Harm*, 183 S.W.3d at 407 (citing *Jackson v. State*, 552 S.W.2d 798, 804 (Tex. Crim. App. 1976)). We assume that the trial court credited the State's uncontradicted representations that it never possessed the phone and that it disclosed the possible existence of the recording to Reid's trial counsel well in advance of trial. *See Ex parte Reed*, 271 S.W.3d at 727 (noting that, in the context of a *Brady* claim, "the trial judge is in the best position to assess the credibility of witnesses" and stating that a reviewing court "will defer to and accept a trial judge's findings of fact . . .when they are supported by the record" (citing *Ex parte Van Alstyne*, 239 S.W.3d 815, 817 (Tex. Crim. App. 2007) (per curiam))). Therefore, with this knowledge in hand, whether actual or constructive, it was incumbent upon Reid, not the State, to investigate the possible existence of the recording. *See Harm*, 183 S.W.3d at 407; *Pena*, 353 S.W.3d at 810. Indeed, just as the trial court suggested, Reid subpoenaed Durbin to appear at trial and produce the phone, meaning this potentially exculpatory evidence was equally and fully accessible to the defense. Moreover, any delay in investigating this matter is attributable to Reid's trial counsel, who only noticed this possible lead on the morning of the original trial setting.

Finally, Reid has failed to show that the contents of the recording are favorable and material to his innocence. *See Strickler*, 527 U.S. at 281–82; *Harm*, 183 S.W.3d at 406. As Reid's trial counsel put it, without viewing the video, it is unclear "whether there was anything there that would be beneficial for the State or exonerating evidence for [his]

20

client." Stated differently, the recording may confirm the testimony of the eyewitnesses who saw Reid pull his firearm and shoot Gonzales in the head. At this point, any suggestion that the recording was exculpatory and material is just speculation. Based on the limited record before us, we deny Reid's third issue.

## V. JURY INSTRUCTION

Reid contends that the trial court erred in denying his request for a jury instruction on the lesser-included offense of manslaughter.

### A. Standard of Review & Applicable Law

We review the denial of a request for a jury instruction on a lesser-included offense for an abuse of discretion. *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023). To be entitled to an instruction on a lesser-included offense, the defendant must satisfy a two-part test. *Id.* First, we compare the statutory elements of the two offenses to determine whether "proof of the lesser offense is included within proof of the greater offense." *Id.* For instance, "[a]n offense is a lesser included offense if . . . it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." TEX. CODE CRIM. PROC. ANN. art. 37.09(3).

"Second, there must be evidence from which a rational jury could find the defendant guilty of only the lesser offense." *Chavez*, 666 S.W.3d at 776. This step is satisfied "if there is affirmative evidence of a factual dispute that raises the lesser offense and rebuts or negates other evidence establishing the greater offense." *Id.* Such a factual dispute can be raised by either "direct or circumstantial evidence so long as a rational jury could interpret the record in a way in which it could find the defendant guilty of only the

21

lesser-included offense." *Id.* We consider the entire evidentiary record in making our assessment. *Id.* at 776–77. "Even a scintilla of evidence is sufficient, no matter how controverted or incredible." *Id.* at 777.

Murder and manslaughter are both result-of-conduct offenses that focus on the death of an individual. *See Ramos v. State*, 407 S.W.3d 265, 270 (Tex. Crim. App. 2013) (manslaughter); *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) (murder). As relevant here, a person commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1). "A person acts intentionally, or with intent, with respect to . . . a result of his conduct when it is his conscious objective or desire to . . . cause the result." *Id.* § 6.03(a). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). A person commits manslaughter "if he recklessly causes the death of another." *Id.* § 19.04(a). "A person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." *Id.* § 6.03(c).

## B. Analysis

The State concedes that manslaughter is a lesser-included offense in this case because the only difference between the two offenses was Reid's mental state when he caused Gonzales's death. *See Schroeder*, 123 S.W.3d at 400 (concluding that manslaughter is a lesser-included offense of murder); TEX. CODE CRIM. PROC. ANN. art. 37.09(3). Rather, the parties disagree about whether the lesser offense was raised by the

22

evidence. Without citing the record to support his contention, Reid argues that "[s]ufficient contradictory evidence and testimony was admitted regarding the circumstances of this shooting, specifically that the firearm was discharged unintentionally during a struggle." The State counters that "[t]he record actually reflects that [Reid] withdrew a firearm from his waistband and shot [Gonzales] in the head." According to the State, the only rational inference to be drawn from the evidence is that Reid knowingly or intentionally caused Gonzales's death. We agree with the State.

There is no evidence in the record that would support an inference that Reid unintentionally discharged the firearm while he and Gonzales were engaged in a struggle. *See Hayes v. State*, 728 S.W.2d 804, 810 (Tex. Crim. App. 1987) (finding charge on recklessness required when "appellant testified that he did not intend to shoot the complainant and that the actual discharge of the gun was accidental, occurring during a struggle between appellant and the complainant"); *cf. Sadler v. State*, 728 S.W.2d 829, 831 (Tex. App.—Dallas 1987, no pet.) (finding evidence sufficient to prove manslaughter where appellant testified that death resulted when he accidentally discharged the firearm during a physical struggle over the firearm). Rather, the record establishes the following sequence of events: Reid instructed Gonzales to leave the bar; as the men exited the bar, Reid began shoving Gonzales; once outside, Gonzales punched Reid; Macias attempted to intervene and stood in between the two men; Reid pulled out his firearm; Gonzales dared Reid to shoot him; Reid pointed the gun at Gonzales and shot him in the head; and Reid fled the scene and afterwards abruptly left the state. Furthermore, the medical examiner testified that the absence of stippling indicated that the shooter was standing at

23

least two and half feet away from Gonzales when the gun was fired. These facts, which were uncontroverted at trial, do not support a rational inference that the shooting was unintentional. *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) ("There was no evidence directly germane to recklessness. Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend 'I didn't mean to shoot anyone' does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots."). Reid's fourth issue is overruled.

## VI.  MISTRIAL

Reid argues that the State made an improper jury argument in the punishment phase when it referred to Reid as "a serial abuser" and that the trial court abused its discretion in denying his request for a mistrial.

During the punishment phase of trial, the State introduced evidence of Reid's prior convictions, including two separate counts of domestic violence battery, two separate counts of violating a no-contact order, two separate counts of violating "a protection from abuse order," and one count of violating a protective order. During his closing argument, Reid's counsel downplayed the significance of Reid's prior convictions, arguing "[h]e's never assaulted or killed anyone prior to this"; "[m]ost of [his] convictions are misdemeanors"; the convictions occurred over eighteen years ago; and he is still living with one of the complainants. Afterwards, during the State's final closing argument, the following exchange occurred:

| [THE STATE]: | Who's Eugene Reid? Co[-]counsel talked about it a moment ago. In here, he is a serial abuser. He has no |
|---|---|

24

|  |  |
|---|---|
| | respect. |
| [COUNSEL]: | Your Honor, I'm going to object to the word "serial abuser." That's not anywhere in those pen packs alleged. |
| [THE STATE]: | Multiple convictions for family violence assault, Your Honor. |
| [COUNSEL]: | That's not a proper term. |
| THE COURT: | Overruled. |
| [COUNSEL]: | It's inflammatory, derogatory and I'm going to ask this Court to instruct the jury to disregard that. |
| THE COURT: | Overruled. |
| [COUNSEL]: | I ask for a mistrial. |
| THE COURT: | Denied. Remember, what the attorneys say is not evidence, all right? It is argument. |

## A.    Standard of Review & Applicable Law

We review the refusal to grant a mistrial based on improper jury argument for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is a remedy of last resort when the improper conduct is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.*

"The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may 'arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence.'" *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019) (quoting *Campbell v. State*, 610 S.W.2d 754,

25

756 (Tex. Crim. App. [Panel Op.] 1980)). Accordingly, the argument "should not 'arouse the passion or prejudice of the jury by matters not properly before them.'" *Id.* (quoting *Campbell*, 610 S.W.2d at 756). There are four general areas of permissible jury argument: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument of opposing counsel, and (4) a plea for law enforcement. *Id.* In assessing punishment, a jury may consider not only the circumstances of the offense for which the defendant was convicted, but also evidence of the defendant's prior criminal record, his general reputation, and his character. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1).

Improper jury argument is generally considered a nonconstitutional error. *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000) (citing the holding in *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998) for the proposition "that most comments that fall outside the areas of permissible argument will be considered to be error of the nonconstitutional variety"). We disregard nonconsitutional errors that do not affect the substantial rights of the defendant. TEX. R. APP. P. 44.2(b). We assess the harm of an improper jury argument during the punishment phase by balancing the following factors: (1) the severity of the conduct (i.e., the prejudicial effect), (2) curative measures (if any), and (3) the certainty of the punishment assessed in the absence of the misconduct. *Martinez*, 17 S.W.3d at 692–93.

## B.    Analysis

It is undisputed that evidence of Reid's prior convictions, including those related to domestic abuse, was properly introduced and relevant to the jury's assessment of his punishment. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). Nonetheless, Reid

contends that by describing him as a "serial abuser," "[t]he prosecutor in this case was improperly seeking to classify [Reid] using legal-sounding terminology that has no basis in law and sought only to inflame and confuse the jury." We conclude that the objected-to comment falls into three categories of permissible argument. First, given Reid's extensive history of offenses related to domestic abuse, referring to him as a "serial abuser" was a pithy but fair summation of the evidence. *See Milton*, 572 S.W.3d at 239. Next, the comment could also be construed as an implicit invitation for the jury to draw that very conclusion based on Reid's criminal history. *See id.* In the State's initial closing argument, the prosecutor drew the jury's attention to Reid's convictions for domestic violence and violating protective orders and asked the jury to use its "common sense" about why someone would need a protective order against Reid in the first instance. Subsequently calling Reid a "serial abuser" was merely a continuation of this argument. Finally, the State was also responding to the arguments of Reid's counsel, who sought to minimize his prior convictions. *See id.* Thus, because the jury argument was proper, Reid's request for a mistrial was unfounded.

But even if we assumed that the characterization was improper, Reid has failed to demonstrate the necessary level of harm to warrant reversal. Within the larger context of relevant evidence before the jury, this stray comment was inconsequential. The focus of the arguments during punishment were the circumstances of Gonzales's murder and the resulting fallout, including the loss suffered by Gonzales's fiancé and children. *See Martinez*, 17 S.W.3d at 693 (finding no reversable error where "[t]he [improper] comments were a very small portion of the State's entire argument at punishment"). Also, although

27

the trial court did not instruct the jury to disregard the comment, it did remind the jury—just as it had instructed them beforehand—that closing arguments are not evidence. *See id.* Lastly, given the nature of the crime and Reid's violent criminal history,[7] the punishment assessed (sixty-five years' imprisonment, rather than the life sentence requested by the State) was well-within the normative range and strongly supported by the evidence. *See id.* Reid's fifth argument is overruled.

### VII.    CRUEL & UNUSUAL PUNISHMENT

Finally, Reid argues that the trial court subjected him to cruel and unusual punishment by denying his request to leave the courtroom before victim impact statements were given. *See* U.S. CONST. amend. VIII. Even though these statements occurred after his sentence had been pronounced, Reid contends that he is entitled to an entirely new trial.

After the jury has assessed punishment and the trial court has pronounced the sentence in the presence of the defendant, "[t]he court shall permit a . . . close relative of a deceased victim . . . to appear in person to present to the court and to the defendant a statement of the person's views about the offense, the defendant, and the effect of the offense on the victim." TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(b). "The whole purpose of requiring that these statements be made after the sentencing stage is complete is to protect the trial judge and the justice system from charges of partiality or any suggestion that these unsworn, uncross-examined statements can or will sway the sentencing

---

[7] In addition to his prior convictions related to domestic abuse, the State also produced evidence that Reid had been previously convicted of three counts of battery on a law enforcement officer.

authority in any respect whatsoever." *Johnson v. State*, 286 S.W.3d 346, 349 (Tex. Crim. App. 2009). Despite these due process guardrails, the focus of Article 42.03 § 1 is clearly centered on victim rights. *Fryer v. State*, 68 S.W.3d 628, 632 (Tex. Crim. App. 2002) ("Article 42.03 gives the victim a right to deliver personally a statement to the defendant and the court in the courtroom.").

Here, it is undisputed that the trial court followed the mandates of Article 42.03, and therefore, the victim impact statements had no bearing on the sentence Reid received. *See Johnson*, 286 S.W.3d at 349. Nevertheless, Reid maintains that the very process of subjecting a defendant to post-sentence victim allocution constitutes cruel and unusual punishment. Reid has not offered any authority to support his position, and we have found none. To the contrary, at least two of our sister courts have considered this argument and rejected it. *Garcia v. State*, 16 S.W.3d 401, 408 (Tex. App.—El Paso 2000, pet. ref'd) (explaining that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation" (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992))); *see also Bolinger v. State*, No. 14-18-00931-CR, 2021 WL 282606 at *9 (Tex. App.—Houston [14th Dist.] Jan. 28, 2021, pet. ref'd) (mem. op., not designated for publication). We agree with their conclusion and find nothing cruel or unusual about the practice of post-sentence victim allocution.

Additionally, the Supreme Court of the United States has determined that the Eighth Amendment does not categorically prohibit the introduction of victim impact

evidence during the punishment phase, even in a death penalty case. *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) ("A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed."). Given this holding, we fail to see how post-sentence victim allocution could run afoul of the Eighth Amendment. Reid's final issue is overruled.

## VIII. CONCLUSION

We affirm Reid's judgment of conviction.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
8th day of August, 2024.

30